[L. A. No. 4078. In Bank.—May 20, 1916.]

CAMP RINCON RESORT COMPANY (a Corporation), et al., Petitioners, v. JOHN M. ESHLEMAN et al., as Members of and Constituting the Railroad Commission of the State of California, Respondents.

Public Utility—Telephone Line from Public Resort—Use by Public. A telephone line which extends from two public resorts to a connecting main line, and which is owned and used by the proprietors of the resorts for their own accommodation and is open to the use of all persons sojourning at such resorts upon payment of a toll, is a public utility, within the meaning of article XII, section 23, of the constitution.

CLXXII Cal.—36

Id.—Voluntary Connection With Another Line—Disconnection of
    Lines—Railroad Commission—Continuation of Service.—Where
    the owners of such telephone line voluntarily permitted a connection
    to be made therewith by a line leading from another public resort,
    the use of which was also open to the public sojourning there, and
    subsequently disconnected the lines, the railroad commission, under
    section 40 of the Public Utilities Act, had authority to order a re-
    connection to be made and to require a continuation of the service.

APPLICATION for a Writ of Certiorari to review an
order of the Railroad Commission of the State of California.

The facts are stated in the opinion of the court.

MacKnight & Fitzgerrell, George W. MacKnight, Ray H.
Fitzgerrell, and H. B. Birchly, for Petitioners.

Douglas Brookman, for Respondents.

SLOSS, J.—Camp Rincon Resort Company, one of the
petitioners, conducts a camp for the entertainment of the
public, at a point in the San Gabriel Canyon, some thirteen
miles from the mouth of the canyon. Follows, the other
petitioner, conducts a similar camp on the other fork of the
canyon. The two petitioners are the joint owners of a tele-
phone line extending from their respective camps to the
mouth of the canyon, where the line connects with the main
line of the Home Telephone Company. The petitioners' line
was used for their own accommodation, and was open to the
use of persons sojourning at the two camps. Messages could
be sent to an exchange of the Home Telephone Company and
through this exchange to the various points on the lines of
that company. The petitioners collected, from persons stay-
ing at their camps and using the telephone line, a charge of
ten cents in addition to the regular long-distance toll of the
Home Telephone Company for any connection made through
its exchange. Of the ten cents, one-half was paid to the
Home Telephone Company and the other half was retained
by the petitioners, respectively.

Cold Brook Camp Company operates a like public camp in
the San Gabriel Canyon, some seven miles above Camp Rin-
con. In 1913 it built a telephone line from its line to Camp
Rincon, where its line was connected with that of the peti-

tioners. This connection was made pursuant to an agreement, under which one hundred dollars was to be paid to the petitioners for the use of their line during the year ending June 30, 1914. During that year Cold Brook Camp Company and the members of the public residing at its camp used the telephone line of the petitioners in connection with that of the Cold Brook Camp Company. The agreed sum was paid. The connection continued for some months after June 30, 1914, no agreement having been arrived at for the compensation to be paid during the second year. In September, 1914, the petitioners disconnected the line of the Cold Brook Camp Company, whereupon that company filed a complaint with the Railroad Commission, asking that the petitioners be directed to reconnect the line upon the payment of a compensation to be fixed by the commission. The commission made an order directing such connection to be made on the payment by the Cold Brook Camp Company of fifty dollars per year. It is this order which is now under review.

The petitioners argue that the commission was without jurisdiction, because, as is claimed, the line maintained by them was not a public utility, but a mere private convenience for the use of the owners of the two camps. But the evidence before the commission clearly justified a different conclusion. Under the constitution of this state (article XII, section 23), every corporation or person owning, operating, managing, or controlling any plant for the transmission of telephone messages to or for the public is declared to be a public utility. It may well be conceded that a purely private business or enterprise cannot be converted into a public utility by mere legislative declaration. But certainly a telephone line operated for the use and accommodation of the public is a public utility, without regard to statutory or constitutional declaration. The camps of the petitioners were open to the accommodation of the public. The telephone lines were devoted to the use of the persons occupying these camps. Here, then, was a devotion of the lines to that portion of the public which enjoyed the conveniences offered by the camps. A service of this kind, offered to "the public generally, or to any defined portion of it," is a public service. (*Pinney & Boyle Co.* v. *Los Angeles Gas & Elec. Corp.*, 168 Cal. 12, [Ann. Cas. 1915D, 471, L. R. A. 1915C, 282, 141 Pac. 620].) The petitioners did not offer the use of their

telephone to privileged and selected individuals in their camps. The service was offered to all, within the class of camp occupants, who desired to use it.

If the petitioners were conducting a public utility, the Cold Brook Camp Company was also conducting a public utility. The order requiring the connection of the two lines was made under the authority of section 40 of the Public Utilities Act. The section was considered by this court in *Pacific Tel. & Tel. Co.* v. *Eshleman,* 166 Cal. 640, [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119]. It was there held that an order requiring a company to connect its lines with those of a competing company, where there had been no such connection theretofore and the first company had not held itself out as willing to make such connections, could not be sustained. The questions involved were so fully discussed in that case that there is no occasion here to repeat our views. It will suffice to say that the present proceeding is not within the rule of the Pacific Telephone Company case, for the reason that the connection here directed to be made was merely a continuation of a service which the petitioner had voluntarily assumed. Whether we regard the Cold Brook Camp Company itself, or the occupants of its camp, as constituting the public to whose use the lines of the petitioner had been offered and dedicated, the fact remains that the connection which the commission ordered was within the scope of a public service which the petitioners had assumed to supply. There was, therefore, no violation of constitutional right in requiring the continuation of the service.

The order is affirmed.

Shaw, J., Melvin, J., Henshaw, J., Lawlor, J., and Angellotti, C. J., concurred.