McCARDLE ET AL. *v.* AKRON TELEPHONE COMPANY.

[No. 12,957. Filed May 11, 1927. Rehearing denied February 16, 1928.]

60

*U. S. Lesh,* Attorney-General, *Edward M. White,* Assistant Attorney-General and *Holman, Bernetha & Miller,* for appellants.

*Charles C. Campbell* and *Albert B. Chipman,* for appellee.

McMAHAN, C. J.—This is an appeal from a judgment vacating and setting aside an order of the Public Service

Commission, made March 23, 1923, requiring appellee to permit an additional drop to be connected with its switchboard for the purpose of providing additional facilities for telephone toll service between Rochester and Akron. Appellee's complaint to vacate this order was filed May 17, and summons made returnable June 4, 1923. The complaint alleges that the order of the commission should be vacated, because it is "insufficient" in that it is unreasonable, for the reason that appellee has a line extending from Akron to a point three miles from Rochester over which a long distance line could be extended; and that the order is unlawful in that it is confiscatory and takes the property of appellee without just compensation.

It is not necessary that a long statement be made concerning the facts leading up to and connected with the making of the order by the Public Service Commission of which appellee complains. The Rochester Telephone Company owns a telephone plant at Rochester and has toll lines to a number of smaller towns nearby. It has had a toll line from Rochester to Akron for many years, where it was connected with the switchboard of appellee company. The latter company owns and operates a telephone system at Akron and also has lines extending into the surrounding country, one of which lines extends to a point about three miles from Rochester. In order that the patrons of these companies might reach distant points, they were compelled to do so over what is generally known as the "Bell system." Prior to May, 1921, the Akron company was connected with the Bell system through Wabash. For some reason the Bell people asked the Rochester company to take the Akron toll business, which the Rochester company agreed to do, after which the Bell people notified the Akron company that it was discontinuing the Wabash service and that it should put its long distance calls

through the Rochester exchange. The business increased so that the one toll line between the two points was not sufficient to take care of the business. The public was demanding and insisting on better or quicker service. It is conceded that another toll line between Akron and Rochester is a public necessity.

On the hearing before the Public Service Commission, appellee contended that instead of being required to permit the Rochester company to connect a second toll line with its switchboard, it should be permitted to extend its line from Athens to Rochester and there connect with the Rochester plant. It also contended that the share of the fees or telephone charges it was receiving under the arrangements it then had with the Rochester company was not sufficient, and that the commission should, at that hearing, determine the part of such charges each company was entitled to receive, as well as determine the method of providing for the additional toll line. The commission decided that the public would be best served by allowing the Rochester company to extend another toll line to Akron and ordered appellee to provide the drop connection for that purpose. No order was made concerning a division of the tolls. The commission, referring to this matter in its order, said, if there was not a proper division of the tolls and appellee was not compensated in a proper amount, the law provided a proper method of settling that question, evidently meaning, that, if after the installation of the additional line, appellee thought it was entitled to a larger share of the tolls than it was then getting, it should file its petition with the commission for an order fixing the compensation it should receive for taking care of the toll service.

Later, the court in the instant case, after having heard evidence in addition to that introduced before the commission, caused a transcript of the same to be certi-

fied to the commission for its consideration and, on September 13, 1923, the Public Service Commission made an order as follows: "That the Akron Telephone Company be, and it is, hereby directed within thirty days from the date of this order to furnish such terminal equipment facilities on the Akron switchboard as will enable the Rochester Telephone Company to terminate an additional long distance line between Rochester and Akron, and that the Rochester Telephone Company bear and assume the expense of furnishing such terminal facilities. It is further ordered that upon the completion of such additional line between Rochester and Akron and the installation of such terminal equipment facilities as are herein ordered, the Akron Telephone Ccmpany shall receive as its compensation twenty-five per cent. of all moneys collected by it for long distance calls originating at Akron and terminating at Rochester, or passing through the switch board of the Rochester Telephone Company."

This new or modified order, after having been certified to the trial court, was by the court vacated and set aside. In this we are of the opinion the court erred. It is conceded that public convenience and necessity required an additional long distance telephone line between Rochester and Akron, and appellee makes no claim that the connection as ordered by the commission will result in any detriment to the service. Its only contention is that the court found that the connection as ordered would result in a substantial loss to it. That is, that the twenty-five per cent. of the money collected by it for long distance calls as ordered by the commission will result in a financial loss to it, and, for that reason, the order of the commission, as an entirety, should be set aside and the judgment of the court affirmed. We are not impressed with this contention.

The order of the commission relating to compensation is in keeping with the arrangements under which the two companies have been operating for some time, and there is no evidence that appellee will be required to employ any additional help because of the additional telephone line. Whether it will suffer any loss financially because of the additional work cannot be ascertained with any degree of certainty until after the additional connection has been made and operated a sufficient length of time. The public should not be required to suffer while the telephone companies are quarrelling over a division of the moneys to be collected in the future. The proper time to settle that question will be after the installation of the additional line. It is not the business of courts to make rates for public utilities or to direct what division of rates shall be made between connecting utilities. That duty belongs to the Public Service Commission. Trouble along this line commenced when the courts first began to interfere with the rate-making powers of the commission. And this prompts us to say that courts should not interfere in such matters except when the evidence clearly shows the action of the commission will result in an irreparable loss to the complaining party. The evidence wholly fails to show any such loss to appellee. The judgment below should have been in favor of the commission.

Judgment reversed, with directions for further proceedings consistent with this opinion.

Dausman, J., absent

## ON PETITION FOR REHEARING

McMAHAN, J.—Before passing upon appellee's petition for a rehearing, we desire to call attention to Rule 29 of the Supreme and Appellate Courts, as amended January 1, 1924. This rule provides, in part, that:

"Application for a rehearing of any cause shall be made by petition, separate from the briefs, signed by counsel, filed with the clerk within sixty days from the rendition of the judgment, stating concisely the cause for which the judgment is supposed to be erroneous, which application shall be supported by briefs only, with arguments set out therein, if desired. Eight copies of the brief must be filed at the same time the petition is filed, and one copy of the brief shall be delivered at once by the clerk to each judge."

Under this rule, an application for a rehearing must be made by a petition separate from the briefs filed in support thereof. In addition to the petition, eight copies of the brief in support thereof must be filed. While the rule does not require the brief to contain a copy of the petition, a lawyer desirous of aiding the court will set out a copy of the petition in his brief. Not only does the rule require that the brief must be filed as a separate document, but it also makes it obligatory on the party seeking a rehearing to file a brief in support of the petition. A failure to file such brief is ground for striking the petition from file. See *Harmon* v. *Smitch* (1927), 86 Ind. App. 527, 157 N. E. 284, 158 N. E. 627.

Appellee insists that the effect of the order of the Public Service Commission is to deprive it of the use of its property and amounts to a taking of its property without requiring compensation therefor to be first fixed and tendered as required by Art. 1, §21, of the Constitution of this state, §73 Burns 1926.

In addition to the facts heretofore stated, the record discloses that the Rochester Telephone Company was organized in 1895, and, within a year thereafter, constructed its plant at Rochester and, in connection therewith, extended a telephone line to Akron, where it had

also constructed a telephone system. It also extended lines to several other towns where it had local exchanges. Later local companies were organized in the several towns and the plants theretofore installed by the Rochester company were sold to such local companies, the service lines connecting each of such lines with the Rochester plant being retained by the latter company. When the system at Akron was sold to the Akron company, the Rochester company retained the line connecting the two plants. The Akron plant and the Rochester plant are now and at all times have been connected, and since May, 1921, the only way the public could reach Akron or the subscribers of the Akron company could reach subscribers on any other line was over the line owned by the Rochester company, which, for many years, had been and now is connected with the switchboard in appellee's plant at Akron.

Appellee cites *Pacific Telephone, etc., Co.* v. *Eshleman* (1913), 166 Cal. 640, 137 Pac. 1119, in support of the contention that the order of the commission was a taking of its property under the power of eminent domain, and was not an order regulating the business of the two companies. We are not called upon to either approve or disapprove the California case. It is not in point. The telephone companies involved in that case were competitors. Their plants had never been connected. In the instant case, the two companies are not competitors and never have been. The plants of the two companies have at all times been connected, and in a sense dedicated to a public use. The public had been using the plants of both companies and the line connecting their switchboards for more than a quarter of a century. The business over the connecting line had increased so that the one line was not sufficient. An additional line was necessary to provide the public with proper facilities. This can be accomplished without

the *taking* of appellee's property or any part of it for a
*new use.* All that is necessary is the construction of
another line between the two plants and the connection
of it with appellee's switchboard, all of which, under the
order of the commission, was required to be done at the
cost of the Rochester company. The Public Service
Commission, in ordering the connection of the additional
line, was simply regulating the business of the two sys-
tems so as to improve a use theretofore dedicated to the
public. The order of which complaint is made was
regulatory in character and made under the police
power and not under the power of eminent domain.
*Pioneer Telephone & Telegraph Co.* v. *State* (1913), 34
Okla. 554, 134 Pac. 398; *Wisconsin Tel. Co.* v. *Railroad
Commission* (1916), 162 Wis. 383, 156 N. W. 614,
L. R. A. 1916E 748; *Michigan State Telephone Co.* v.
*Michigan Railroad Commission* (1916), 161 N. W. (Mich.)
240; *Pacific Tel. & Tel. Co.* v. *Wright-Dickinson Hotel
Co.* (1914), 214 Fed. 666. The Eschleman case was
disapproved in the last two cases cited. If the Public
Service Commission had attempted to require appellee
to construct a new line between two points where it had
no line at that time, or to compel it to dedicate its prop-
erty to a new service, there might be some ground for
contending that such an order was beyond the power of
the commission. See *Southern Bell Tel. & Tel. Co.* v.
*Town of Calhoun* (1923), 287 Fed. 381; *Atchison, etc.,
R. Co.* v. *Railroad Commission* (1916), 173 Cal. 577, 160
Pac. 828, 2 A. L. R. 975.

A careful study of the Eschleman case supports the
conclusions we have reached. For instance, at pages
677 and 678, the court said: "But, unless we have read
the law to no purpose, the vitally essential principle
limiting the exercise of the police power and distinguish-
ing it from the exercise of the power of eminent domain,
is that private rights in the former case must, for the

benefit of society, yield to reasonable regulations controlling the use of property, in the case of public utilities, *within the use* to which the property has been dedicated. The law has the power to regulate the use to increase efficiency and prevent abuses, and such regulations, though they involve an expenditure of money or a modification of the use, are regulations which the law-making power may impose by virtue of the very fact that the property has been dedicated to that public use. Therefore, it is that the decisions declare either that such a regulation is not a taking within the constitutional inhibition, or declare that the regulation being legal, the mere fact that the expenditure of money is involved in no sense amounts to a taking."

Appellee is a public service corporation, and is subject to public regulation, and in the absence of constitutional or statutory requirement might not be required to make a physical connection with another company. But there is good authority for the position that, when such a physical connection has been voluntarily made, under a fair and workable arrangement and guaranteed by contract and the continuous line has come to be patronized and established as a great public convenience, such connection shall not, in breach of the agreement, be disconnected by one of the parties. In such cases, the public has an interest in the arrangement and its right must be given due consideration. *Clinton-Dunn Telephone Co.* v. *Carolina Tel. & Tel. Co.* (1912), 74 S. E. (N. C.) 636.

Rehearing denied.

Dausman, J., absent.