### TRI-STATE TELEPHONE AND TELEGRAPH COMPANY v. INTERCOUNTY TELEPHONE COMPANY.[1]

January 2, 1942.

No. 33,038.

[1]Reported in 1 N. W. (2d) 853.

*C. B. Randall, Noel C. Fleming,* and *Tracy J. Peycke,* for appellant.

*Sawyer & Sawyer,* for respondent.

PETERSON, JUSTICE.

This proceeding was instituted before the railroad and warehouse commission under Mason St. 1927, § 5295, by the Tri-State Telephone and Telegraph Company (herein referred to as Tri-State) against the Intercounty Telephone Company (herein referred to as Intercounty) to compel, upon the ground of public convenience, the continuance of the physical connection of the lines of the companies maintained under contract, notice of termination of which pursuant to its terms had been given by Intercounty.

The statute provides for compulsory physical connection of telephone lines and for the continuance of such connection where public convenience so requires. The first paragraph provides in part:

"Whenever public convenience requires the same, every telephone company shall, for a reasonable compensation, permit a physical connection or connections to be made, and telephone service to be furnished between any telephone exchange system operated by it, and the telephone toll line or lines operated by another company, or between its telephone toll line or lines and the telephone exchange system of another telephone company, or between its toll line and the toll line of another company, whenever such physical connection or connections are practicable and will not result in irreparable injury to the telephone system so compelled to be connected."

It also provides that where, after investigation and hearing, the commission shall find that "physical connections will not result in irreparable injury to such telephone properties, it shall by order direct that such connections be made, and prescribe reasonable conditions and compensation therefor and for the joint use thereof."

The second paragraph provides:

"Wherever a physical connection or connections exist between any telephone exchange system operated by a telephone company and the toll line or lines operated by another telephone company or between its toll line or lines and the telephone exchange system of another telephone company, or between its toll line and the toll line of another telephone company, neither of said companies shall cause such connection to be severed or the service between said companies to be discontinued without first obtaining an order from the commission upon an application for permission to discontinue such physical connection. Upon the filing of an application for discontinuance of such a connection, the commission shall investigate and ascertain whether public convenience requires the continuance of such physical connection, and if the commission so finds, shall fix the compensation, terms and conditions of the continuance of said physical connection and service between said telephone companies."

Tri-State owns and operates telephone exchanges at St. Paul, Owatonna, Austin, Albert Lea, and many intermediate points, with toll lines connecting its several exchanges. It has a line extending from Owatonna through Blooming Prairie to Hayfield.

Intercounty has exchanges at Ellendale, Blooming Prairie, and Hayfield. It has toll lines which connect these exchanges and which extend from Ellendale to Owatonna, Ellendale to New Richland, Ellendale to Hollandale, Blooming Prairie to Hollandale, Hayfield to Dodge Center, and Hayfield to Brownsdale.

Both companies acquired their properties, in the area where Intercounty operates, from corporate predecessors to whose rights and franchises they have succeeded. Intercounty's lines were built about 1901. It acquired them in the manner stated in 1926. Tri-State acquired its properties in the same manner in 1918.

Sometime prior to 1915, the then owners and operators of the lines in question by contract arranged for physical connections of the Intercounty and Tri-State lines at Owatonna, Blooming Prairie,

500

and Hayfield. Apparently the contract has been renewed or extended from time to time. In 1938 the parties entered into the contract here involved.

Under the contractual arrangement, all Intercounty messages destined for Owatonna and points beyond coming into its exchanges at Hayfield and Blooming Prairie were transferred at those points to Tri-State for transmission. Messages from Owatonna and beyond destined for Intercounty's subscribers at Blooming Prairie and Hayfield were carried over Tri-State's lines to those points, where they were transferred to Intercounty. In short, Tri-State had the entire long-distance "haul" between Hayfield-Blooming Prairie and Owatonna. Messages between Ellendale and points tributary thereto destined to Owatonna and beyond were transmitted over Intercounty's lines. At Owatonna outgoing messages were transferred from Intercounty's lines to Tri-State's, and incoming messages were transferred from Tri-State's to Intercounty's lines. Toll messages originating at Hayfield and Blooming Prairie destined for Owatonna and beyond were never carried by Intercounty over its own lines *via* Ellendale. All its other toll messages were carried over its own lines.

Becoming dissatisfied with the contractual arrangement, Intercounty decided to terminate it and gave notice of such intention. Thereupon Tri-State instituted the present proceeding. It claims that public convenience requires continuance of the physical connections and that as a matter of law it is entitled to carry toll messages as it did under the contract, subject only to a determination of its compensation by the commission.

Intercounty admits that public convenience requires the continuance of the physical connections. It claims that it is entitled to carry to Owatonna over its own lines all messages destined for Owatonna and beyond received by it at any exchange, including those at Blooming Prairie and Hayfield, and to transfer the same to Tri-State at Owatonna by means of the connection there existing, and it prayed for an appropriate order in the premises.

The effect of granting Intercounty's counter petition would be to permit Tri-State to have the haul from Owatonna to Blooming Prairie at Hayfield and to permit Intercounty to have such haul over its own lines from Hayfield and Blooming Prairie *via* Ellendale to Owatonna. In other words, Intercounty wants to carry its messages as far as its lines permit instead of transferring them to Tri-State at the first junction point, just as it is willing to accord to Tri-State a similar haul of its messages from Owatonna to Blooming Prairie and Hayfield.[2]

The proceeding, instituted as one to compel continuance of the physical connections between the companies, finally involved only the routing of messages. Tri-State characterizes all business between Hayfield-Blooming Prairie and Owatonna as its—"our"— business, whether it originates on Intercounty's lines or not. It contends that it is entitled to have the routing of messages continued as before as a matter of legal right upon the ground that it has lines and equipment for handling such business and has on file with the commission a tariff of its charges; and that Intercounty is not entitled to its proposed routing for the reasons that, since Tri-State has such lines and equipment, it will constitute a duplication of telephone lines and equipment in violation of Mason St. 1927, § 5299, to permit Intercounty to route its messages as proposed; that Intercounty's proposed routing *via* Ellendale of messages destined for Owatonna will involve an extension of its lines for which a certificate of public convenience will be required under § 5300, which Intercounty admittedly does not have, and that Intercounty has failed to. secure the commission's approval

---

[2]Owatonna, Blooming Prairie, and Ellendale form a triangle. Owatonna lies to the north about 15 miles northeast of Ellendale and about 18 miles northwest of Blooming Prairie, which in turn is about 12 miles east of Ellendale. Hayfield lies about 10 miles east of Blooming Prairie. Under the contract, transmission is along the line of the triangle between Blooming Prairie and Owatonna. Intercounty petitions to route the messages along the base of the triangle to Ellendale and thence up its westerly side between Ellendale and Owatonna.

of its tariff of toll charges for the proposed routing which it has filed pursuant to § 5290.

· In opposition, Intercounty showed that neither it nor its predecessors had ever filed or been required to file any tariffs until about four or five months prior to the hearing before the commission, when at the suggestion of the commission it then filed its tariffs, and that some time thereafter a representative of the commission had conferences with the representatives of Intercounty and other companies operating in the same general part of the state concerning the adjustment and equalization of rates. Apparently the commission had not approved Intercounty's tariffs.

Intercounty contended that, since it did not propose to install any new lines or equipment, but intended to use those which it already had and had been using for many years, there was no duplication of telephone lines and equipment and hence no need for a certificate of public convenience under § 5299; that it proposed only to reroute a part of its business and not to extend its lines; that the approval of its tariffs by the commission is not required by the statute; but, if it were, such approval is not a condition precedent to granting its petition and can and should be given when and if it is determined that messages are to be routed as it has petitioned, and that it is entitled on this record to haul its messages over the routes mentioned.

There was no showing that public convenience required that messages from Hayfield and Blooming Prairie destined for Owatonna and beyond should be transferred to Tri-State at Hayfield and Blooming Prairie rather than at Owatonna after transmission to that point *via* Ellendale. While the continuance of the connections under the contract was requested upon the ground of public convenience, decision by the commission turned upon what it considered, as we shall point out instantly, to be strict legal rights of the parties rather than the requirement of public convenience.

At the hearing, counsel for Intercounty was informed that the question of public convenience would be "determined" by "what

rights" it might have. The commission, then being so advised, adopted the view that Intercounty had "no right, by prescription or otherwise, to transmit messages" from Hayfield and Blooming Prairie to Owatonna *via* Ellendale, and that the right to transmit messages from Hayfield and Blooming Prairie to Owatonna "direct belongs" to Tri-State. The opinion rests upon the propositions that Tri-State either held or did not need—it is not clear which—a certificate of public convenience and had filed and secured the approval of its toll charge tariffs; that Intercounty did not have such a certificate for the business in question; and that the commission had not "authorized" "a tariff for such service." Thereupon the commission made a decision that public convenience required the continuance of the physical connections of the lines of the two companies and the routing of messages as under the cancelled contract and that Tri-State had a right to the routing from Hayfield and Blooming Prairie direct to Owatonna, and it retained jurisdiction to ascertain the compensation to be paid Tri-State for such service.

On appeal by Intercounty, the case was tried on the record made before the commission. The court below held, and judgment was entered, that Intercounty was entitled to carry the messages from Hayfield and Blooming Prairie to Owatonna *via* Ellendale and to deliver the messages to Tri-State lines at Owatonna by means of the existing physical connection of the lines there; that the commission's order be set aside and vacated; and that either party might apply to the commission for a further hearing and taking of further evidence respecting reasonable division of tolls and charges as to business transacted. Tri-State appeals from the judgment.

■ No approval by the commission of the initial tariff of rates filed by Intercounty was necessary. Section 5290 provides:

"Upon the taking effect of this act it shall be the duty of every telephone company to forthwith file with the commission a schedule of its exchange rates, tolls, and charges for every kind of

service, together with all rules, regulations and classifications used by it in the conduct of the telephone business, all of which shall be kept on file by the commission subject to public inspection."

This relates to the initial filing. The statute contains no provision that the commission shall approve or authorize the tariffs. The filing of the tariffs, without more, constitutes compliance with the statute. Although the statute has been in force since 1915, the tariffs in question were the first and only ones filed by Inter-county. If there was fault in failure to file the tariffs at a prior time, it must rest upon the commission in failing to compel a prior filing as well as upon the company for its omission. Where such rates are unreasonable, the commission on its own motion or a complaint may prescribe reasonable rates under Mason St. 1927, § 5291, which provides: "No rates filed with the commission shall be changed by any telephone company without an order of the commissioner sanctioning the same." The commission's approval or authorization is required only to change old and to establish new rates in lieu thereof.

Furthermore, there is no good reason why tariffs of rates for a proposed service should be approved until it is determined that the service is to be rendered. In holding that the tariffs should be approved before the service was authorized the commission plainly got the cart before the horse.

By Mason St. 1927, § 5299, it is provided:

"No lines or equipment shall be constructed or installed for the purpose of furnishing local rural or toll telephone service to the inhabitants or telephone users in any locality in this state, where there is then in operation in the locality or territory affected thereby another telephone company already furnishing such service, without first securing from the commission a declaration, after a public hearing, that public convenience requires such proposed telephone lines or equipment; but the governing body of any municipality shall have the same powers of regulation which it now possesses with reference to the location of poles and wires

so as to prevent any interference with the safe and convenient use of streets and alleys by the public."

The statute is not applicable to the instant case because Intercounty did not propose to construct or install lines or equipment for the purpose of furnishing local rural or toll telephone service already rendered by *another* company. The important fact is that Intercounty, not another company, was furnishing such rural or toll service. Tri-State was not furnishing such service. Intercounty transmitted messages coming into its Hayfield and Blooming Prairie exchanges to Owatonna *via* Tri-State's lines, and its other messages for Owatonna over its own lines *via* Ellendale. It proposes to continue to furnish such service, but by a different routing—that is, by transmitting all messages to Owatonna *via* Ellendale. Further, such a routing involves the use of existing, not the construction or installation of new, lines and equipment. It is clear that the statute has no application to the instant case. Intercounty was not required to obtain a certificate of public convenience for the rerouting of its business.

■ It is also provided in § 5295:

"Whenever application is made to the commission requesting physical connection it shall be presumed that such connection is necessary, and that the public convenience will be promoted thereby, and the burden of overcoming such presumption shall be upon the party resisting such application."

The presumption that public convenience will be promoted by the physical connections applies to those of Intercounty as well as those of Tri-State.

■ Section 5295 is also explicit that an order directing compulsory physical connection of the lines of telephone companies must "prescribe reasonable conditions." This requirement applies also to the continuance of existing connections. Reasonableness is implicit in any regulation. The statute is a regulatory measure designed to secure the continuous transmission of telephonic messages by compelling telephone companies to physically connect

their lines where the public convenience requires. It does not authorize the taking of one company's business and giving it to another:

"It has been held that the constitutional delegation of power to require physical connection between two telephone systems does not confer the right to compel business intercourse between two competing companies to the detriment of either, nor does it give the right to specify the *routing* of messages to the detriment of one company." (Italics supplied.) Annotation, 11 A. L. R. 1217.

The mere fact that there was prior connection of the lines of the companies under contract gives rise to no rights with respect to continuance of such connections. The prior connection does not entitle either company to have the contractual arrangement continued. Nor does it operate as a dedication of the telephone properties to the joint use for which the contract provided. Oklahoma-Arkansas Tel. Co. v. S. W. Bell Tel. Co. (8 Cir.) 45 F. (2d) 995, 76 A. L. R. 944, and annotation at p. 953, *et seq.*

The case of Gilman v. Somerset Farmers Co-op. Tel. Co. 129 Me. 243, 151 A. 440, is squarely in point that the order here is unreasonable. There, as here, the lines of two telephone companies had been physically connected under contractual arrangement. The contract was terminated by giving the required notice. In a proceeding to compel physical connection as it existed under the contract the commission by order directed such physical connection and that messages originating on one line be transferred to the other at the nearest point of connection. The effect of such transfer was to deprive the one company of hauling messages over its lines as far as they extended and to that extent compelled it to give to the other a part of the haul for which it had facilities. The court held that the order, so far as it compelled the one company to transfer its messages to the other so as to deprive it of part of the haul over its own lines and gave that part of the haul to the company to which the transfer was made, directed confisca-

tion of the transferring company's property, not regulation, stating (129 Me. 250, 151 A. 443):

"Requirement, fair and reasonable, that one public telephone utility connect its lines with those of another, would not amount, in a constitutional sense, to a taking of property. * * *

"The Public Utilities Commission may, to some extent, affect and curtail the property and property rights of public utilities, but the Commission may not, under the guise of supervision, regulation, and control, take such property and rights. Property and property rights may not be taken, except the taking be by eminent domain."

The decision refers to many of the principal cases. There is no decision to the contrary. The distinction between regulation and confiscation marks the line between validity and invalidity. New England Tel. & Tel. Co. v. Dept. of Public Utilities, 262 Mass. 137, 159 N. E. 743, 56 A. L. R. 784. Therefore, the commission's order directing Intercounty to transfer to Tri-State, at Hayfield and Blooming Prairie, messages originating on its own lines which it could carry to Owatonna *via* Ellendale, deprived Intercounty of the use of its facilities to make such haul and required it to turn over to Tri-State that part of its business. To that extent the order was unreasonable and void.

■ The district court properly held that to such extent the commission's order was void. As the record then stood, it showed public convenience for the physical connection demanded by Intercounty. No further finding was necessary to establish such fact. The only fact remaining to be found was that of reasonable compensation for the connection. The commission had retained jurisdiction to find such fact. All that remained for the court was to "make such order to take the place of the order appealed from as is justified by the record before it." Mason St. 1927, § 5308. In the instant case, that order was one which the law compelled and with respect to which neither the commission nor the court had any discretion, *viz.*, to order the physical connection as de-

manded by Intercounty. The language of § 5295 is mandatory. It plainly says that where the commission finds that public convenience so requires it shall order the continuance of existing connections. The legislative function has been delegated to the commission with very definite limitations. The commission is vested with the function of determining the facts—that is, the existence of public convenience, reasonable terms and conditions, and just compensation. With the question of compensation we are not now concerned, because the commission has retained jurisdiction to determine that fact. The commission has not prescribed any terms and conditions for the connections demanded by Intercounty, since its decision was adverse to that company. Upon remand, it can and it will be the duty of the commission to prescribe such terms and conditions.

The statute prescribes the rule, where it is found that public convenience requires the continuance of a connection. Once the fact of such public convenience is established, the statute provides that the commission *"shall"* order the continuance. While the commission is vested with discretion in exercising the fact-finding function, it has no discretion with respect to its own duty when the facts are once found. Where public convenience so requires, the duty of the commission to order the continuance of a connection is mandatory and without discretion.

The statute also limits the fact-finding function of the commission by providing that a petition for compulsory physical connection, which also applies to the continuance of such a connection, is presumed to be required by public convenience. Where, as here, the petition stands uncontroverted, the presumption prevails and establishes the fact that public convenience requires the continuance of the connection. Where a statute defines and prescribes a duty dependent upon a finding of certain facts, the duty becomes absolute and without discretion upon the finding of such facts. So, here, the duty to order the continuance of the connection at Owatonna became absolute and without discretion when

the fact that public convenience so required was established in virtue of the statutory presumption.

In Oklahoma-Arkansas Tel. Co. v. S. W. Bell Tel. Co. (D. C.) 33 F. (2d) 770, P. U. R. 1929E, 260, affirmed (8 Cir.) 45 F. (2d) 995, 76 A. L. R., 944 (*certiorari* denied, 283 U. S. 822, 51 S. Ct. 346, 75 L. ed. 1437), where the situation of the companies was practically the same as that in the instant case, the court used language which is applicable here (45 F. [2d] 999):

"It is certainly no more inconvenient or expensive to transmit and receive messages over the lines of appellee than over those of appellant. Prompt and continuous service is afforded in fact and within the meaning of the pertinent statutes."

Our conclusion is that, since the commission was not guided by applicable rules of law in arriving at its decision, its decision is illegal. State v. M. & St. L. R. Co. 209 Minn. 564, 297 N. W. 189. It is unreasonable, also, for the reasons which we have stated. On the record, Intercounty's claim of right to transfer messages at Owatonna after transmitting them from Hayfield, Blooming Prairie, and other points *via* Ellendale should have been sustained. The judgment that the commission's order be vacated; that Intercounty is entitled to route its messages *via* Ellendale to Owatonna and there pass them to Tri-State by means of the existing connection; and that the case be remanded to the commission for further proceeding respecting reasonable division of tolls and charges was correct. The judgment should have provided further, and it is hereby modified so as to provide, that upon remand the commission prescribe reasonable terms and conditions for the continuance of such connections.

Of course the commission may, in its discretion, further consider the questions presented by this record in the light of any further showing as to the facts.

Affirmed as modified.

MR. JUSTICE STONE took no part in the consideration or decision of this case.