# STATE EX REL. FRANK LAURISCH v. CLARENCE F. POHL AND OTHERS.[1]

January 22, 1943.

No. 33,357.

[1]Reported in 8 N. W. (2d) 227.

*Milton D. Mason,* County Attorney, for appellants (respondents below).

*Josiah A. Baker,* for respondent (relator below).

YOUNGDAHL, JUSTICE.

Respondent, Frank Laurisch, petitioned the district court of Blue Earth county for a writ of *mandamus* ordering and requiring the defendants Clarence F. Pohl, Math Sanger, William E. Price, Louis F. Kraus, and William C. Minks, members of the board of county commissioners of Blue Earth county, hereinafter called the "commissioners," to redistrict their county. To the commissioners' answer to the petition, respondent filed his demurrer, which was sustained. The court below then made findings of fact and ordered judgment granting the relief prayed for in the petition and ordering the commissioners to "proceed forthwith" to redistrict their county. From the order granting the writ of *mandamus* and from the order sustaining respondent's demurrer, the commissioners appeal.

The following facts are undisputed. It appears that respondent is a resident of the town of Danville in the fifth commissioner district of Blue Earth county; that the second commissioner district is wholly composed of the area within the boundaries of the city of Mankato; that the population thereof, according to the last federal census taken in 1940 and on file in the offices of the secretary of state and of the county auditor, is 15,654 persons, or 43 percent of the total population of 36,203 persons in Blue Earth county; that there is not maintained, either wholly or partly, in the second commissioner district any state penal or corrective institution or state hospital for the insane. Respondent claims that the commissioners should be compelled to redistrict the county pursuant to

the provisions of Minn. St. 1941, § 375.02 (Mason St. 1940 Supp. § 651), which, in part, provides:

"Counties may be redistricted by the county board after each state or federal census; and when it appears that after a state or federal census 30 per cent or more of the population of any county is contained in one district, exclusive of the inmates of any state penal or corrective institution, or state hospital for the insane, maintained wholly or partly within such district, such county shall be redistricted by its county board."

The commissioners admit that the population of the second commissioner district has been more than 30 percent of the total population of Blue Earth county for some years past, but they have not redistricted their county. They contend that the statute is discretionary.

Appellants have failed separately to state and number their assignments of error, as required by the rules of this court; but, inasmuch as the sole question considered by the court below and discussed in appellants' brief is whether or not the statute here considered is mandatory or directory, and since respondent has not been misled by this irregularity, we deem it sufficient in this case merely to call attention to the importance of strict compliance with the rules of the court.

■ The commissioners contend that the word "shall" as used in the statute is directory rather than mandatory. We cannot agree. There is no universal rule by which directory provisions in a statute may, under all circumstances, be distinguished from those which are mandatory. Consideration must be given to the legislative history, the language of the statute, its subject matter, the importance of its provisions, their relation to the general object intended to be accomplished by the act, and, finally, whether or not there is a public or private right involved. The statute empowering county commissioners to redistrict their counties was first enacted in 1866 (G. S. 1866, c. VIII, § 85). Until 1917, apart from minor changes in phraseology, the substance remained

unchanged and provided, in part, that "The board of commissioners *may* re-district their counties respectively, after each United States or state census, taking the population as shown by their said census as the basis." (Italics supplied.) In 1917, however, by L. 1917, c. 370, § 1, the statute was amended by adding the following provisions:

"and when it appears that after a state or federal census thirty per cent or more of the population of any county is contained in one district, such county shall be re-districted by its county board or if it shall appear from the last census, federal or state, that thirty per cent of the population of any county is contained in one district, such county shall be re-districted by its county board."

This provision appears in Minn. St. 1941, § 375.02, above quoted, in its present form. Manifestly, the object of the amendment was to provide for proportionate representation in the several commissioner districts in the counties of the state. In construing Minn. Const. art. 4, § 23, which provides for the reapportioning of legislative districts, this court in State ex rel. Meighen v. Weatherill, 125 Minn. 336, 340, 147 N. W. 105, 106, said:

"The purpose and object in view is the same, namely, to secure such rearrangement of legislative districts as will extend equal representation to all parts of the state."

The rights of the citizens of Blue Earth county are directly involved, and the legislature, by its amendment, vested in them a right inherently theirs—a right to participate in the affairs of their county on an equal footing. To interpret the statute as urged by appellants would be to render nugatory the 1917 amendment and make it mere surplusage. Prior to the 1917 amendment, the commissioners were vested with discretion in redistricting their respective counties without regard to any percentage of population, except that the law (G. S. 1866, c. VIII, § 85) provided that the districts contain "as nearly as practicable, an equal population." If after the amendment it was still discretionary with the commissioners to redistrict their counties without regard to

the percentage of population, there would have been no purpose in adding the provision in question. Obviously, such was not the intention. It is clear that the legislature had in mind imposing a positive legal duty upon the commissioners to set in motion the act of redistricting when the population of any one commissioner district reached or exceeded 30 percent of the population of the county.

The meaning of a similar statutory change is clearly expressed in Champ v. Brown, 197 Minn. 49, 56, 266 N. W. 94, 97, where the court said:

"It is important that we bear in mind that in § 163 of the 1889 probate code the word 'shall' was used. When the revisers re-wrote that and the other mentioned sections into R. L. 1905, § 3845, there must have been a reason or purpose for changing the word 'shall' to 'may.' We think the cases cited in 59 C. J. 1082, sustain this quotation from that authority:

" '* * * an amendment substituting "may" for "shall" manifests a clear intent to make the act referred to optional and permissive instead of mandatory.' "

And further, *Id.* 197 Minn. 57, 266 N. W. 98:

"It seems to us that there can be no doubt that the revisers knew the clear distinction in law between the meaning of the mandatory word 'shall' as compared with the permissive word 'may.' * * * A change was intended, and the chosen word so indicates."

The analogy to the instant case is evident. Here the amendment provided that the act "shall" be performed, whereas the previous statute contained the discretionary language that it "may" be done.

■ The rule to be applied in construing those statutes which impose duties upon public officers is stated in 6 Dunnell, Dig. & Supp. § 8954, as follows:

"Whenever public interests or individual rights call for the exercise of a power given to public officials, the language used in conferring the power, though permissive in form, is to be deemed mandatory." And further: "All statutory provisions, not on their face merely permissory or discretionary, are intended to be obeyed, or else they would never have been enacted, and therefore they come to the several officers who are to act under them as commands."

Applying this general rule are Bowen v. City of Minneapolis, 47 Minn. 115, 49 N. W. 683, 28 A. S. R. 333; Kipp v. Dawson, 31 Minn. 373, 17 N. W. 961, 18 N. W. 96; State ex rel. Olson v. Board of Co. Commrs. 83 Minn. 65, 85 N. W. 830; State ex rel. Board of Co. Commrs. v. Demann, 83 Minn. 331, 86 N. W. 352; State ex rel. Skyllingstad v. Gunn, 92 Minn. 436, 100 N. W. 97; State ex rel. Rowe v. Emanuel, 142 Neb. 583, 7 N. W. (2d) 156. It seems clear, therefore, that only one construction can be given to § 375.02 (§ 651), namely, that the commissioners are mandatorily required to redistrict their counties when the population of any one district therein is 30 percent or more of the population of the county.

■ The commissioners further contend that if the statute here considered is given a mandatory construction the act of redistricting calls for an exercise of discretion and that *mandamus* will not lie to control their discretion. In ordering the writ of *mandamus* the court does not interfere with the exercise of the commissioners' discretion. It merely compels the performance of a public duty which the law clearly imposes upon them. It sets in motion the exercise of their discretion but does not attempt to control the particular manner in which the duty is to be performed. The rule that *mandamus* is the proper remedy to employ against persons composing the membership of a town board who did not in good faith attempt to discharge the duty imposed upon them as a board has been laid down in Olson v. Honett, 133 Minn. 160, 162, 157 N. W. 1092, 1103, where the court, speaking through Mr. Justice Holt, said:

"While courts do not undertake to control the manner in which official acts of a discretionary nature are to be performed, still *mandamus* will lie to set discretion in motion. If therefore the petition and writ show that there is a refusal to exercise any discretion whatever, or if it is made to appear that the discretion has been exercised in a clearly arbitrary and capricious manner the lower court should be sustained in its ruling."

In an early case, this court in State ex rel. Casmey v. Teal, 72 Minn. 37, 39, 74 N. W. 1024, said:

"Where the duty is judicial and not purely ministerial, mandamus will lie to compel the exercise of official discretion or judgment, but not to direct as to the manner in which the duty shall be performed. In such cases, the function of the writ is merely to set in motion."

And further, *Id.* 72 Minn. 40, 74 N. W. 1024:

"We think the evidence would justify the conclusion that the respondent has never exercised his judgment or discretion in the matter, but has, in effect, refused to act at all."

To the same effect are Tri-State Tel. & Tel. Co. v. Intercounty Tel. Co. 211 Minn. 496, 1 N. W. (2d) 853; State ex rel. Landon v. Anding, 132 Minn. 36, 155 N. W. 1048, and cases there cited; City of St. Paul v. Freedy, 86 Minn. 350, 90 N. W. 781; Gleason v. University of Minnesota, 104 Minn. 359, 116 N. W. 650.

■ The commissioners object to the language of the order directing the issuance of the writ of *mandamus* wherein it directs the commissioners to "proceed forthwith" to redistrict their county. They contend that they have discretion to act at such time as they deem proper. Ordinarily, this would be true. We observe, however, that in the instant case, although nearly three years have elapsed since the official census filed with the secretary of state and the county auditor apprised the commissioners of the fact that the population of the second commissioner district exceeded 30 percent of the population of Blue Earth county, the act of re-

districting has not yet begun. It is a well recognized rule that when a public officer is called upon to perform a public duty by statute and no time is specified for the performance of the act, it is required that the act be performed within a reasonable time. Suhr v. County of Dodge, 183 Minn. 299, 236 N. W. 463; Escher v. Carroll County, 159 Iowa 627, 141 N. W. 38. From the undisputed facts in this case it appears that the commissioners have not only failed to comply with the statute, but do not intend to do so unless compelled by mandate. The provision of the trial court's order directing that they "proceed forthwith" to redistrict their county was proper under the facts in this case.

The orders of the lower court are affirmed.

