NORTHWESTERN BELL TELEPHONE COMPANY (Complainant-Applicant), Appellant,

v.

CASCADE TELEPHONE COMPANY (Respondent), and Iowa State Commerce Commission, Appellees.

No. 2–57880.

Supreme Court of Iowa.

Oct. 15, 1975.

Wm. F. McFarlin and David S. Sather, Des Moines, O'Connor, Thomas, Wright, Hammer, Bertsch & Norby, Dubuque, and M. R. Quinlan, Omaha, Neb., for appellant.

David Hughes, Cascade, for respondent-appellee.

Donald C. Uthus, Daniel J. Fay and Gary D. Stewart, Des Moines, for appellee Iowa State Commerce Comm.

Richard H. Wright, Bloomfield, for Rural Iowa Independent Tel. Ass'n, amicus curiae.

RAWLINGS, Justice.

Northwestern Bell Telephone Co. (Bell) appeals from adjudication by district court reversing an order by Iowa State Commerce Commission (Commission) favorable to Cascade Telephone Company (Cascade) regarding installation and maintenance of long distance telephone connection equipment in Cascade's central exchange office. We reverse.

November 6, 1973, Bell filed a complaint with Commission against Cascade pursuant to the provisions of Chapter 490A, The Code 1973. Complainant asserted it had historically furnished all required long distance facilities for Cascade, but was informed to the effect the latter intended to install and operate certain long distance apparatus (N2 carrier equipment) which Bell had proposed to do. Alleging a disagreement between the two utilities as to which should provide such facilities, Bell requested a determination by Commission, under Code § 490A.11, as to terms and procedures under which such "toll connections should be interchanged".

By answer Cascade averred Bell's proposed plan would not furnish the quality of service Cascade could supply. It further alleged Bell had neither the right nor duty to install and maintain said equipment within Cascade's quarters.

June 19, 1974, after hearing on said complaint and answer, Commission issued its findings and order. Among other things, Commission found Cascade's proposed installation of carrier terminals would entail a duplication of facilities. Commission further held:

"On the basis of the record before us, it is our conclusion that Bell should continue to provide the necessary long distance equipment, in this instance the N2 carrier equipment terminal in Cascade for the rendition of toll service to Cascade.

"The reasonable location for the necessary N2 carrier equipment is in the Cascade central office. Should the parties find that they cannot agree on the terms and conditions under which space and power will be provided we will retain jurisdiction over that aspect of this case. A total refusal on Cascade's part to provide space in its central office will have no effect on our determination as to which utility will provide the N2 carrier equipment."

Cascade then appealed to Dubuque District Court (district court). The related petition averred Commission's order was (1) not supported by substantial evidence; (2) based on erroneous conclusions of law; (3) in excess of jurisdiction; and (4) otherwise contrary to law.

At the district court hearing Bell contended a determination was essential regarding Commission's authority under § 490A.11 to direct installation of a Bell-owned N2 carrier system in Cascade's plant. In resisting Bell's request Cascade alluded to certain excerpts from the briefs and Commission hearing transcript wherein both Bell and Commission acknowledged Cascade's right to refuse Bell access to Cascade's central office for installation and operation of N2 carrier equipment. Cascade attendantly urged that Bell and Commission were estopped from raising any issue regarding the latter's authority to order installation of Bell-owned equipment in Cascade's plant.

November 21, 1974, district court, by "judgment and decree", made and entered these Conclusions of Law:

"14. The direction and requirement by the Commission that Cascade permit Bell to enter upon its premises and assert rights therein upon terms and conditions established by the Commission is an unlawful deprivation of Cascade's property rights without due process of law and in excess of the power of the Commission."

"16. In making its determination, the Commission is acting in a judicial capacity and as such, should be bound by certain basic principles applying to all judicial determinations. * * *.

"The jurisdiction of the Commission is confined solely to those powers and duties granted to it by statute and Section 490A.11 under which this proceeding was had contains no provision authorizing the Commission to retain jurisdiction to see how its determinations work out. Further, the question of the location of the N2 equipment appears to lie at the root of the entire dispute between the parties. The Commission found, and everyone

agreed, that the proper location was in the central office of Cascade. The Commission appears to acknowledge that it has no method of compelling Cascade to accept the equipment while remaining under Bell's ownership but, nevertheless, insists upon the ownership remaining in Bell, no matter where it is located. It seems difficult to understand how the Commission could determine that the public interest is best served by this arrangement without knowing where the N2 equipment is, eventually, going to be located."

Thereupon trial court vacated the order appealed from and remanded the cause to Commission for further proceedings. Commission accordingly scheduled the controversy for presentation of additional evidence.

Prior to any such evidentiary proceedings Bell effected permissive appeal to this court. In so doing Bell contends district court's conclusion No. 14, quoted above, is erroneous as a matter of law.

Incidentally, the Rural Iowa Independent Telephone Association (RIITA) has favored us with a brief, amicus curiae, in support of Cascade's position.

This is the issue posed on appeal by Bell: Does the Iowa State Commerce Commission have authority under Iowa law to order Cascade Telephone Company to permit Northwestern Bell Telephone Company to locate certain N2 long distance equipment within the central office building of Cascade Telephone Company in order to connect more long distance circuits of Northwestern Bell Telephone Company to local exchange circuits of Cascade Telephone Company under terms and conditions prescribed by the Commission for the purpose of improving long distance service into and out of the Cascade Telephone Company service area?

An answer thereto depends, in turn, upon the determination of several questions, each treated later in separate divisions.

I. We are primarily confronted with a unique request by Cascade for dismissal of this appeal.

In support thereof Cascade argues Bell and Commission are "estopped" from taking issue with trial court's Conclusion of Law No. 14, heretofore quoted. This stand is premised upon the aforesaid contention that Bell and Commission had previously conceded Cascade's right to refuse Bell access to and floor space in Cascade's plant.

Bell maintains, however, there is a significant distinction between (1) a unilateral attempt by it to "force" entry into Cascade's quarters and (2) a Commission order that Cascade accord Bell permission to effect necessary toll connections within Cascade's exchange.

■ The argument advanced by Cascade does not constitute good cause for dismissal hereof. Neither Bell nor Commission ever did more than concede the former had no intrinsic right to per se force entry into and install additional long distance connections in Cascade's central exchange. Therefore Bell's position is well taken. See generally 31 C.J.S., Estoppel, § 117a. Further discussion will serve no useful purpose.

Cascade's request for dismissal of Bell's appeal is denied.

II. The initial substantive issue to be resolved is whether Commission had authority to prescribe terms and procedures under which toll communications shall be exchanged between Cascade and Bell.

■ By Conclusion of Law No. 14, *supra*, district court found the order appealed from was "in excess of the power of the Commission". If the court thus meant Commission lacked statutory power to determine the location or point of physical interconnection, it thereby erred.

Commission's prerogative stems from at least three statutes: In relevant part they provide:

"490A.1. *Applicability of authority.* The Iowa state commerce commission

shall regulate the rates and services of public utilities to the extent and in the manner hereinafter provided.

"As used in this chapter, 'public utility' shall include any person, partnership, business association, or corporation, domestic or foreign, owning or operating any facilities for:

"1. * * *

"2. Furnishing communications services to the public for compensation."

"490A.2. *Powers—rules.* The commission shall have broad general powers to effect the purposes of this chapter * * *."

"490A.11. *Telephone tolls determined.* Whenever toll connections between the lines or facilities of two or more telephone companies has been made, or is demanded under the statutes of this state and the companies concerned cannot agree as to the terms and procedures under which toll communications shall be interchanged, the commission * * * shall determine such terms and procedures."

We are satisfied our decision in *Northwestern Bell Tel. Co. v. Hawkeye State Tel. Co.,* 165 N.W.2d 771 (Iowa 1969), is instantly dispositive. There, as here, Bell sought to connect its long distance lines at a self-selected point with facilities of the local telephone exchange. Also, there, as here, the local utility refused to connect at the designated place, proposing its own plan for joinder with the toll facilities. Although resolution of the controversy turned on the doctrine of primary jurisdiction, *Hawkeye* did establish these important precepts:

*First,* "[c]onnection of local exchanges with the lines of a long distance company is a 'service' within the purview of chapter 490A as that term is used in the statute". 165 N.W.2d at 776.

*Second,* "location of the proper point of connection is a 'service' such as to bring the controversy within the jurisdiction of the commerce commission under chapter 490A * * *." *Id.,* at 775.

*Third,* terms and procedures contemplated by § 490A.11 are *not* limited to financial matters involved once a connection is made. *Id.*

In the same vein it has been said, "The power to prescribe the terms under which telephone lines are to be connected is a necessary incident of the power to require connections." 74 Am.Jur.2d, Telecommunications, § 31 at 331–332.

III. Mindful of the foregoing, can Cascade now effectively maintain Commission had no authority to designate Cascade's central exchange as the point of interconnection?

Cascade contends Commission is instantly engaged in impermissible eminent domain proceedings against Cascade's property. On this premise we are asked to affirm the portional part of district court's decree which says, "The direction and requirement by the Commission that Cascade permit Bell to enter upon its premises and assert rights therein upon terms and conditions established by the Commission is an unlawful deprivation of Cascade's property rights without due process of law * * *."

In support of the above stated contention Cascade cites *Tri-State Telephone & Tel. Co. v. Intercounty Tel. Co.,* 211 Minn. 496, 1 N.W.2d 853 (1942) and *Pacific Telephone & Telegraph Co. v. Eshleman,* 166 Cal. 640, 137 P. 1119 (1913).

It is to us apparent, however, *Tri-State* is inapposite and *Pacific Telephone & Telegraph* has been so discredited as to be of no precedential weight or value.

Briefly stated, we are not persuaded Cascade's property will be "confiscated for the convenience of another utility". Commission's order clearly contemplates Bell will compensate Cascade for whatever floor space and power the new carrier facilities may require.

Furthermore, it is at this point emphasized that Bell presently provides long dis-

tance service to Cascade through a point of connection located within Cascade's central office building. Commission's order thus does little more than expand or modify an existing arrangement which Cascade has never contended was "confiscatory". In light thereof it is evident the present case closely resembles *Camp Rincon Resort Co. v. Eshleman*, 172 Cal. 561, 158 P. 186 (1916), wherein the California Supreme Court determined a state commission was authorized to order connection of two telephone lines. In so holding, the court said:

> "[*Pacific Telephone & Telegraph*] held that an order requiring a company to connect its lines with those of a competing company, where there had been no such connection theretofore and the first company had not held itself out as willing to make such connections, could not be sustained. * * * It will suffice to say that the present proceeding is not within the rule of the Pacific Telephone Company Case, for the reason that the connection here directed to be made was merely a continuation of a service which the petitioner had voluntarily assumed." 158 P. at 187.

And even if *Pacific Telephone & Telegraph* were deemed applicable, it represents a distinct minority view. As stated in Annot., 11 A.L.R. 1204, 1212:

> With the exception of *Pacific Teleph. & Teleg. Co. v. Eshleman* * * *, the cases are in harmony in holding that telephone companies, by accepting a franchise for conducting their business of transmitting oral messages, render themselves amenable to control and regulation by the state, similar to that applicable to other public utility corporations; and that within the scope of such regulations and control there is vested in the state the power to compel telephone companies physically to connect their lines, where such regulation is reasonable in view of the benefit thereby accruing to the public, although some loss or inconvenience may result therefrom to the telephone companies, provision, however, being

made for compensation for the use by the patrons of the one company of the line of the other company, and proper adjustment being made as to the expense of connection."

The above annotation also discusses several cases in which the foregoing view was adopted. Some of them further expressly criticize *Pacific Telephone & Telegraph, supra.* See *e. g., State v. Skagit River Telephone & Telegraph Co.*, 85 Wash. 29, 147 P. 885, 892 (1915), mod. on other grounds, 85 Wash. 29, 151 P. 1122; *Pacific Tel. & Tel. Co. v. Wright-Dickinson Hotel Co.*, 214 F. 666, 670 (D.C.Or.1914); *Michigan State Telephone Co. v. Michigan Railroad Com'n.*, 193 Mich. 515, 161 N.W. 240, 243 (1916).

In fact the majority rule is thus stated in 26 Am.Jur.2d, Eminent Domain, § 186:

> "According to the greatly prevailing view, a state, in the exercise of its police power or power to regulate public service corporations, may, in a proper case, require such corporations to furnish facilities for a common service to the public where they are physically connected, or to make a physical connection where such requirement is reasonable, regard being had to the injury likely to result to the corporations, and proper provisions being made to compensate them for the service rendered. Such regulations do not amount to a taking of property in violation of constitutional restrictions."

See also 74 Am.Jur.2d, Telecommunications, § 30.

Bell also cites *Southwestern Telegraph & Telephone Co. v. State*, 109 Tex. 337, 207 S.W. 308 (1918), as authority for Commission's conclusion to the effect N2 carrier system here involved should be installed in Cascade's exchange building. In the cited case Southwestern was directed to permit the Paducah Telephone Company to physically connect Paducah's lines with Southwestern's switchboard. On appeal by Southwestern it expressed an unconstitutional condemnation argument similar to

that here voiced by Cascade. In holding adverse to Southwestern the Texas Supreme Court aptly declared, 207 S.W. at 309:

"The order of the council is assailed by the Southwestern Company as a taking of its property without compensation and without due process of law. * * * In our opinion compliance with the order will not result in any 'taking' of the company's property in any constitutional sense. Its effect is only to require that by means of the connection upon its switchboard it afford, for compensation, the service of its toll lines to the public at certain points upon the Paducah Company's line. * * * In extending the service it will remain in undisputed control of all of its property, including the switchboard. The operation of its lines for the purpose of the service will be entirely in its hands. No different use or burden will be imposed upon its property. * * * If this be a 'taking' of the company's property, the property of such a company is likewise taken every time the company is made to connect its line with the storehouse or residence of a local subscriber as the means of affording him similar service. It is not a taking of property. It is merely a reasonable regulation of the company's service for the public convenience which the State may prescribe in the exercise of its police power, and to which the company as a common carrier is properly subject."

Although *Ferguson v. Illinois Cent. R. Co.*, 202 Iowa 508, 210 N.W. 604 (1926), dealt with § 8169, The Code 1924, in a factually dissimilar setting, this court did analogously observe, 202 Iowa at 510, 210 N.W. at 605:

"The statute is broad enough by its terms to vest in the Board of Railroad Commissioners the authority to determine the rental value of a site upon a railroad right of way that would be used by a municipality for a public warehouse, or by a party for a wholly public purpose. When viewed in this light and applied for this purpose, the statute would be upheld and the act of the Board of Railroad Commissioners would not be an invasion of constitutional rights respecting the taking of property."

Since Commission's order expressly contemplates Bell and Cascade reach an agreement as to the "terms and conditions under which space and power will be provided", or the Commission will appropriately act, requisite compensation is clearly contemplated. Under these circumstances the order was a valid regulatory exercise of Commission's administrative power and authority.

Additionally, all here concerned agree the best location for N2 carrier equipment is Cascade's central exchange office. *Hawkeye* clearly established Commission's authority to determine the point of connection, and its designation of Cascade's office is hardly surprising in view of Cascade's expressed belief that this would be the best situs. To accept Cascade's argument on this appeal we would have to accord it a unilateral right—a right we refused to give Bell in *Hawkeye*. As Commission points out, only three parties could logically determine the point of interconnection: Bell, Cascade or the Commerce Commission. Certainly Bell could not unilaterally make that determination. *Hawkeye, supra*, 165 N.W.2d at 775. By the same token Cascade has no such prerogative. And, as heretofore indicated, *Hawkeye* dispositively holds Commission has this right. Accord, *Hooper Telephone Co. v. Nebraska Telephone Co.*, 96 Neb. 245, 147 N.W. 674 (1914). See also *McCardle v. Akron Telephone Co.*, 87 Ind. App. 59, 156 N.E. 469 (1927), reh. den., 87 Ind.App. 59, 160 N.E. 48 (1928).

It therefore follows and we now hold Commission had requisite authority to order installation of Bell-owned facilities in Cascade's central office. Consequently, trial court erred in its Conclusion of Law No. 14, *supra*. Further in this regard, Commission's order was neither in excess of its power nor a deprivation of Cascade's due process rights.

IV. As previously disclosed, Commission determined a reasonable location for the N2 carrier equipment was in Cascade's central office. Since the equipment was to be owned by Bell, some arrangement regarding terms, procedures and compensation to be paid Cascade by Bell was required. Rather than fix and prescribe same the Commerce Commission tentatively accorded these utilities leave to negotiate the matter, if possible. In event, however, Bell and Cascade could not reach a mutually acceptable agreement, Commission retained jurisdiction to act in the matter. But trial court held Commission had no such power absent express statutory authorization. This is to us implausible.

At the outset, we look to Code § 490A.11, quoted above. No language in this enactment forbids the above noted retention of jurisdiction. Moreover, Code § 490A.11 inferentially recognizes toll connections between the lines or facilities of two or more telephone companies is generally a matter of private agreement between the connecting utilities. Demonstrably, the cited statute expressly grants Commission jurisdiction to determine necessary terms and procedures whenever "the companies concerned cannot agree" on them. Commission is thus empowered to determine terms and procedures absent an agreement by the involved utilities.

This is exactly the action taken by Commission. Having decided certain basic aspects of the controversy, incidental factors relating to the connection in Cascade's building were tentatively left to negotiations by Bell and Cascade. Authority to act in this regard was "retained" by Commission in event "the parties find that they cannot agree on the terms and conditions under which space and power will be provided * * *."

A close examination of the posture of this case and the wording of § 490A.11 reveals the involved dispute goes more to form than substance. Commission already had jurisdiction of the instant controversy when the companies were ordered to make toll connections. To say such jurisdiction somehow ceased when Commission issued its questioned order is to ignore the plain intent of § 490A.11.

In brief there is no plausible basis upon which to hold Commission lacked jurisdiction to ultimately determine terms and procedures if and when the two utilities failed to negotiate a mutually acceptable agreement.

We are satisfied Commission's questioned action was in accord with approved administrative procedure. As stated in 74 Am. Jur.2d, Telecommunications, § 31:

"The matter of regulating the terms and conditions of a physical connection of the lines of different telephone companies, where the companies cannot agree, may be reserved by the commission for future hearing, and orders may be made from time to time, adjusting the rights of the companies as future developments may require."

See also *Farmers Mutual Tel. Co. v. Central Union Tel. Co.*, P.U.R. 1915E 13 (Ill.1915); *Hooper Telephone Co. v. Nebraska Telephone Co.*, 96 Neb. 245, 147 N.W. 674 (1914) (*semble*); Annot., 16 A.L.R. 352, 361–362.

The above quote is also buttressed by this statement in 2 Davis, Administrative Law Treatise, § 18.09 at 610 (1958):

"Continuing jurisdiction to take account of developments after the entry of an order is very common. For an equity court to hold a case so as to take such further action as evolving facts may require its familiar judicial practice, and *administrative agencies necessarily are empowered to do likewise.* When the purpose is one of regulatory action, as distinguished from merely applying law or policy to past facts, an agency must at all times be free to take such steps as may be proper in the circumstances, irrespective of its past decisions." (emphasis supplied).

The same source notes continuing jurisdiction, absent express statutory provision

therefor, is found "in hosts of cases". *Id.,* n. 22. See *e. g., Brougham v. Blanton Mfg. Co.,* 249 U.S. 495, 501, 39 S.Ct. 363, 365, 63 L.Ed. 725 (1919); *Wilbur v. United States,* 281 U.S. 206, 217, 50 S.Ct. 320, 324, 74 L.Ed. 809 (1930).

Consequently, trial court erred in holding Commission had no authority to reserve jurisdiction as to placement of necessary N2 carrier equipment in Cascade's central office, should the parties find they cannot agree on terms and conditions under which space and power shall be provided.

To the extent district court's judgment and decree is inconsistent with our holdings, *supra,* it is reversed.

This case must therefore be remanded to the Iowa State Commerce Commission for further appropriate proceedings.

Nothing above said shall in any event be construed, however, as favorable or adverse to any factual determination yet to be made and effected by Commission regarding the instant controversy.

Reversed and remanded.

All Justices concur except McCORMICK, J., who takes no part.