VANDALIA RAILROAD COMPANY *v.* SCHNULL ET AL.
[No. 23,204.   Filed February 21, 1919.]

1. ACTION.—*Statutory Remedies.—Exclusiveness.*—Where a statute creates a right that did not exist at common law, and for the new right a remedy is prescribed by the act, the whole matter of right and remedy is within the act and no part of either otherwise exists.   p. 90.

2. CARRIERS.—*Rights of Shippers.—Common Law.*—At common law shippers were entitled to reasonable service and reasonable rates, which rights were enforceable at law and in equity. p. 90.

3. CARRIERS.—*Rights of Shippers.—Regulations.—Statute.*—The act creating the Railroad Commission, Acts 1905 p. 83, as amended by Acts 1907 p. 454, §5533 *et seq.* Burns 1914, does not create a new right of shippers to reasonable service and reasonable rates, but only a new remedy for an existing right. p. 91.

4. ACTION.—*New Remedies. — Cumulative.* — New remedies are cumulative and not exclusive, unless the act creating them so declares expressly or by clear implication.   p. 91.

5. CARRIERS.—*Rates.—Order of Railroad Commission.—Enforcement.*—That the Railroad Commission is empowered, under Acts 1905 p. 83, as amended by Acts 1907 p. 454, §5533 *et seq.* Burns 1914, to enforce its orders imports neither expressly nor by implication that the parties to a proceeding by shippers, involving reasonableness of rates, may not use an order fixing rates as an element of evidence in an effort to enforce existing rights at common law.   pp. 91, 92.

6. CARRIERS. — *Rights of Shippers. — Remedies.—Statute.*—The act creating the Railroad Commission ꞏand empowering it to enforce its orders, Acts 1905 p. 83, as amended by Acts 1907 p. 454, §5533 *et seq.* Burns 1914, does not prevent the enforcement by shippers of rights at common law or in equity, since the remedies provided in the act are cumulative and not exclusive.   pp. 91, 92.

7. CARRIERS.—*Order of Railroad Commission.—Statute.—Retroactive Effect.*—Section 7 of the act of 1907 (Acts 1907 p. 454, amending Acts 1905 p. 83) did not limit the life of an order of the Railroad Commission fixing rates entered in 1906, under the act of 1905, since the amending act of 1907 was not retroactive.   p. 92.

8. COURTS.—*Opinions.—Precedents.—Dicta.*—Where an opinion rests upon two distinct grounds, either of which is sufficient to support the conclusion, neither ground can be ignored as *obiter dictum.*   p. 93.

Vandalia R. Co. *v.* Schnull—188 Ind. 87.

9. CARRIERS.—*Regulation of Rates.—Police Power.*—Orders of the state, through the Railroad Commission, regulating the rates of carriers are an exercise of the state's public welfare power.  p. 93.

10. CONSTITUTIONAL LAW.—*Police Power.—Statutes.*—The state never separates itself from the exercise of its public welfare power unless by clear expression of intention to do so.  p. 93.

11. CARRIERS. — *Rates. — Orders. — Vacation. — Statute. — Construction.* — An order of the Railroad Commission, under Acts 1905 p. 83, fixing rates, did not exhaust the commission's powers and, though affirmed on appeal, the commission could have made a new order in the interest of changing needs of the public welfare, unless prevented by the act; hence an order so affirmed did not become perpetual, so as to warrant a construction of the amending act, Acts 1907 p. 454, §5433 *et seq.* Burns 1914, which limited the life of existing orders, as being remedial and retroactive.  p. 93.

12. CARRIERS.—*Rates.—Reasonableness.*—A carrier is entitled to fair remuneration on all its investments and property, and for this it undertakes to reasonably serve in the capacity chosen by it.  p. 96.

13. CARRIERS.—*Rates.—Reasonableness.*—If a carrier receives in the aggregate a fair remuneration, notwithstanding the rates on part of its business are not remunerative, it has no basis for complaint; hence a hearing involving fairness of rates on a part of its line is not properly confined to particular rates and actual cost in carrying the classes specified on such part of the line.  pp. 96, 99.

14. CARRIERS. — *Rates. — Statutes. — Reasonableness. — Presumption.* — Legislation fixing rates is presumed to be reasonable, and this presumption prevails until all the facts showing the contrary appear, although no hearing was had before its passage, and a much stronger presumption obtains in favor of an order of the Railroad Commission, under Acts 1905 p. 83, after a trial between the parties actually interested; hence a showing by a carrier that rates over a part of its line for transporting particular classes are not remunerative is not sufficient, the burden being upon the carrier to exclude other facts bearing on the question.  p. 100.

15. CARRIERS.—*Regulation of Rates.—Constitutional Provisions.* —The state is restrained by the Constitution from arbitrary action by the legislature or by agency of the Railroad Commission in fixing rates charged by carriers; but there is a wide field of discretion in the legislature or the commission.  p. 101.

16. CARRIERS.—*Filing Schedule of Rates.—Effect.*—Where the Railroad Commission, prior to the passage of Acts 1907 p. 454,

§5533 *et seq.* Burns 1914, and after a hearing, made an order fixing rates for shipments of certain classes of freight over a division of a carrier's lines, the rates thereafter fixed in a schedule and filed by the carrier in accordance with such act do not govern, the carrier being bound by the commission's order. p. 101.

From Marion Superior Court; *Linn D. Hay,* Judge.

Action by Gustav A. Schnull and others against the Vandalia Railroad Company. From a judgment for plaintiffs, the defendant appeals. *Affirmed.*

*D. P. Williams* and *Pickens, Moores, Davidson & Pickens,* for appellant.

*Smith, Remster, Hornbrook & Smith,* for appellees.

HARVEY, C. J.—On December 14, 1906, the Railroad Commission of Indiana, after a hearing upon a petition of the present appellees, to which the present appellant was defendant, entered an order fixing rates for shipments of certain classes of freight over appellant's division extending from Indianapolis west to the state line.

Appellant did not appeal from said order to our Appellate Court, as the statute creating the commission authorized, but declined to comply therewith, and continued to charge appellee and other shippers of said classes of freight over said division rates higher than those specified in said order.

Appellee prosecuted in the superior court of Marion county an action for a mandatory injunction against appellant to prevent appellant from charging other than the rates so fixed. Appellee's complaint was held good, and appellant's second and third paragraphs of answer held insufficient on demurrers; and from the judgment rendered, after trial, against appellant, this appeal is prosecuted.

In support of its position that the complaint is insufficient, appellant asserts that appellees have no right to maintain this action because it is an effort to enforce

an order of the Railroad Commission, whereas the act creating such commission (Acts 1905 p. 83) and the amendatory act (Acts 1907 p. 454, §5533 *et seq.* Burns 1914) name a remedy for the enforcement of such orders (§5550 Burns 1914) ; and that an act creating a new right and a remedy therefor excludes all other remedies.

The rule is well established that when a right is thus created which did not exist at common law, and for that new right a remedy is by the act prescribed, the

1. whole matter of right and remedy is within the act, and no part of either otherwise exists.

The question we have is whether said rule applies to the situation here presented. If a new right was not created, all discussion of this proposition is ended.

Appellant asserts that the act of 1905, *supra,* did not give the commission any right, power or authority to institute and prosecute any action at law, or suit in equity, or any other proceeding, for the purpose of enforcing obedience to its order; but that obedience to such orders should be secured through the assessment and collection of penalties provided in the act.

Appellant asserts that this amendment, *supra,* greatly increased and added to the powers, authority and the duties of the commission, especially giving it authority and power to enforce its orders by actions at law and suits in equity in its own name, in lieu of the provisions of the act of 1905, *supra,* and that the authority and power so given the commission to enforce rate orders is exclusive of all other remedies.

At common law appellees were entitled to both reasonable service and reasonable rates. Appellees had all

2. remedies, at common law and in equity, to enforce their said rights.

The statutes under consideration do not create a new right to such service, but something more in the

nature of a new remedy for an old right.   The general assembly deemed it best to exercise its undoubted power of regulation and determine in a general and broad way the question as to what rates are reasonable, and for this purpose the legislature created the commission.

As the creation and empowering of the commission related to a matter of remedy for existing things which needed a remedy, the rule applies that new remedies are cumulative and never exclusive, unless the act creating the same so declares expressly or by clear implication.   *Lang* v. *Scott* (1825), 1 Blackf. 405, 12 Am. Dec. 257; *Chicago, etc., R. Co.* v. *Hall* (1893), 135 Ind. 91, 34 N. E. 704, 23 L. R. A. 231.

That the commission is empowered to enforce its orders, imports neither *expressly* nor by *implication* that the parties may not use an order fixing rates as an element of evidence in an effort to enforce an old right.

We find in the act nothing expressly excluding other remedies, nor do we find any provision so positive as to imply a negative of other remedies.   *Chicago, etc., R. Co.* v. *Hall, supra; Dollar Savings Bank* v. *United States* (1873), 19 Wall. 227, 22 L. Ed. 80; *Fletcher* v. *State Capital Bank* (1858), 37 N. H. 369.

This seems especially pertinent to the present situation; these appellees procured an order or judgment of the commission, as the result of a hearing or trial, wherein this appellant was defendant, that the identical rates appellees seek to enforce for the identical classes of freight tendered for shipment, over the identical division of appellant's road here involved, are reasonable, and this order is still in force, unless it has expired by operation of law.

This order bound appellant in favor of appellees, particularly, and also in favor of all other like shippers,

and is evidence, if not conclusive evidence,
5.    against appellant of the matters thus established,
available in any action by appellees to enforce
appellees' old right.

We further find in the act itself (Acts 1905 p. 83,
*supra*) evidence that it was not the intention of the leg-
islature that the remedy created should be ex-
6. . clusive—for instance §5, page 88: "In all ac-
tions between private parties and railroad com-
panies   *   *   *   brought under this law, the rates,
charges, orders, rules, regulations and classifications ap-
proved or made by said commission before the institu-
tion of such action shall be held, deemed and accepted
to be reasonable, fair and just." See also §§16, 18.

This suit in equity is justified by reason of the great
number of transactions involving small amounts, and
the fact that the commission may also, at law or in
equity, enforce its orders, and that the duty of so doing
is by statute imposed upon the commission, does not
prevent one entitled to the benefit of an order from
instituting an independent action.

We are satisfied no new right was created; an addi-
tion was created to the old remedies.

It is next insisted that the complaint is insufficient in
that it seeks to enforce an order which had theretofore
expired by operation of law.

In *State, ex rel.* v. *Vandalia R. Co.* (1914), 183 Ind.
49, 108 N. E. 97, this court determined that the act of
1907, *supra*, which prescribes that "all orders of
7.    the commission,   *   *   *   shall continue in
force for such period of time, not exceeding two
years, as shall be prescribed in the order of the commis-
sion" was not retroactive, and therefore did not limit
the life of the order here in question, which was entered
in December, 1906.

Vandalia R. Co. *v.* Schnull—188 Ind. 87.

Appellant claims that the portion above referred to, of said opinion, is *obiter*. The opinion rests upon two distinct grounds, either of which is sufficient to support the conclusion. In such case if one such element be ignored in one case as *obiter*, the other element may as justly be ignored as *obiter* when cited in another case involving such element, and the result would be an opinion all *obiter* and all ignored except the final order and mandate. That neither element can be ignored is the rule.

Counsel argue that under the act of 1905, *supra*, an order fixing rates tied the commission's hands, exhausted its powers, except as the order might be set aside on appeal, and if affirmed on appeal the order became perpetual, no matter what injustice resulted, and therefore there was a strong inducement to an amendment in 1907, *supra*, limiting the life of then existing orders as well as future orders, and that there is good reason for construing the amendment of 1907, *supra*, as remedial and intended to be retroactive.

This argument overlooks the fact that all such orders are an exercise of the state's public welfare power; and that the state never separates itself from the exercise of this power unless by a clear expression of an intention to do so. We find no such expression; therefore the state might, if the facts justified, have made a new order; the commission might likewise have made a new order. The spirit and life of the state's said power is that circumstances change the public welfare needs, and the spirit of the commission's powers, unless limited by the act, is that it may consider such changed conditions and make orders fitting present needs. We are content to adhere to the decision holding that said act was not retroactive.

By the demurrer to the second paragraph of answer is presented the question whether it is enough for the defendant railroad company to allege and prove that the rates fixed in said order were at the time of the filing of the answer, and at the time of trial, confiscatory in that they "will not yield to defendant revenue sufficient to reimburse defendant for its actual cost and outlay in handling and carrying the classes of property specified in said order and provide a fair return to defendant on the value of defendant's property used and employed in handling and carrying the classes of freight described in said order."

It is asserted by appellee that in so far as the facts so alleged are material, they are provable under the general denial, and that the sustaining of this demurrer was harmless, though it be held erroneous. It is asserted by appellant that this answer controverts no allegation of the complaint, in that the complaint simply alleges that the order was entered and is in force; whereas the answer relates to the time the answer was filed and to the future, and is, in effect, an allegation that said rates are then, and will be, confiscatory, though they may not have been confiscatory when the order was entered; and that conditions arising after the complaint was filed are not provable under the general denial.

The cause was tried, and appellant's evidence tends to prove the substance of the answer, as above quoted, and no complaint is made of the exclusion of any offered evidence.

Whether, therefore, our ruling be based on appellant's construction of its answer or upon the evidence heard, we are satisfied that the defendant has not tendered or made a defense, and that the decision of the court is correct. We are led to this conclusion by the following considerations:

Appellees assert that, for all that thus appears, appel-

lant may receive sufficient net income on all its other business on this division, and on all its business, including the specified classes, on other divisions, to furnish it a fair return on all its investments and operations, including the transportation of these classes, and therefore appellant will receive all to which it is entitled, though this order be enforced.   Appellee cites in support of this position the following authorities: *Smyth* v. *Ames* (1897), 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819; *Minneapolis, etc., R. Co.* v. *Minnesota* (1901), 186 U. S. 257, 22 Sup. Ct. 900, 46 L. Ed. 1151; *Arkansas Rate Cases* (1911), 187 Fed. 290; *Minnesota Rate Cases* (1912), 230 U. S. 352, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A 18; *Missouri Rate Cases* (1912), 230 U. S. 474, 33 Sup. Ct. 975, 57 L. Ed. 1571; *Chicago, etc., R. Co.* v. *Railroad Commission* (1913), 152 Wis. 654, 140 N. W. 296; *Chesapeake, etc., R. Co.* v. *Public Service Commission* (1914), 75 W. Va. 100, 83 S. E. 286, L. R. A. 1917F 1190; *Commissioner, etc.* v. *Wabash R. Co.* (1901), 126 Mich. 113, 85 N. W. 466; *Seaboard Air Line Ry.* v. *Railroad Commission* (1913), 206 Fed. 181; *Atlantic Coast Line* v. *North Carolina, etc., Commission* (1906), 206 U. S. 1, 27 Sup. Ct. 585, 51 L. Ed. 933, 11 Ann. Cas. 398; *Missouri Pacific R. Co.* v. *Kansas* (1909), 216 U. S. 262, 30 Sup. Ct. 330, 54 L. Ed. 472; *State* v. *Chicago, etc., R. Co.* (1911), 239 Mo. 196, 143 S. W. 785; Reeder, Validity of Rate Regulations 230-238.

Appellant asserts that the state has no power to thus segregate a certain class of traffic and require the railroad company to carry that traffic at unremunerative rates.   Appellant cites: *Northern Pacific R. Co.* v. *North Dakota* (1914), 236 U. S. 585, 35 Sup. Ct. 429, 59 L. Ed. 735, L. R. A. 1917F 1148, Ann. Cas. 1916A 1; *Norfolk, etc., R. Co.* v. *Conley* (1914), 236 U. S. 605, 35 Sup. Ct. 437, 59 L. Ed. 745; *Stone* v. *Farmers' Loan,*

*etc., Co.* (1885), 116 U. S. 307, 331, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 630; *Northern Pacific R. Co.* v. *North Dakota* (1909), 216 U. S. 579, 581, 30 Sup. Ct. 423, 54 L. Ed. 624; *Minnesota Rate Cases, supra,* 433, 434.

There is little or no conflict in the decisions bearing upon these propositions, when principles involved are minded; but there is much confusion growing out of the application of such decisions to other cases. When the decisions cited by both appellant and appellee are read in view of the fundamental principles involved, and in view of the respective rights of the parties to each cause, such confusion almost altogether disappears.

A carrier is entitled to fair remuneration on all its investments and property. It is entitled to no more. For this it undertakes to reasonably serve in the capacity chosen by it. It undertakes to serve for no less.

If the carrier receives in the aggregate such fair remuneration, notwithstanding the rates on a part of its business are not remunerative, the *carrier* has no basis for complaint. *Atlantic Coast Line* v. *North Carolina, etc., Commission, supra,* 6, and decisions therein cited. When a rate on a part of the business is too low, some other part of the carrier's business may be paying too much, thus preventing a deficiency of income which would otherwise result from the nonremunerative rates. In such case the shippers affected by the higher rates may have a basis for complaint. *Smyth* v. *Ames, supra, et seq.*

If on such shipper's complaint the rates are reduced, and thus the carrier's total net returns caused to be nonremunerative, the *carrier* may *then* be entitled to complain and show the facts, and be entitled to an increase of the unfairly low rates.

It does not, however, always follow that because rates on one division are low, rates on other divisions are un-

duly high.  There may be other considerations which justify the low rates, and at the same time justify the other and higher rates.  *Chicago, etc., R. Co.* v. *Railroad Commission, supra.*

The low rates may attract business which, except for the low rates, would go to some other competitive carrier.  The low rates thus add an income which would otherwise be absent, though the investment for operation existed.  The necessary cost of construction and operation of a particular division may be so excessive that rates remunerative on other divisions are not remunerative as compared with such excessive costs, but are, nevertheless, an advantage for competitive purposes.  Railroad companies, in the absence of prohibitive regulation, at times voluntarily fix low rates for the purposes stated, recognizing that the ultimate result is beneficial to both carrier and customer.  When such is the case the reason is found in considerations and facts beyond the mere comparison of the rates with the investment and cost of operation; in other words, found in consideration of increased business, of adequate service, and the welfare of both carrier and shipper.

As shown in *Wood* v. *Vandalia R. Co.* (1913), 231 U. S. 1, 34 Sup. Ct. 7, 58 L. Ed. 97, this appellant fixed on some of its divisions lower rates for corresponding distances than those fixed by appellant for the same character of business, on the division here concerned; the higher rates so fixed for this division being reduced by this order.  Assuming that the cost of operation and the investment are approximately the same on each division, the difference in rates made by appellant on the different divisions cannot be justified except by rebutting that assumption, or by a showing of other considerations.  In other words, difference in necessary investment and facts other than income and investment

may be shown, if such facts were the basis of the carrier's voluntary action. The propriety of this view is recognized in *Minneapolis, etc., R. Co.* v. *Minnesota, supra,* 267, where the court approving and quoting from *Smyth* v. *Ames, supra,* says: "It often happens that, to meet competition from other roads at particular points, the companies themselves fix a disproportionately low rate upon certain classes of freight consigned to these points." It is upon such breadth of consideration that the court continues such opinion, as follows: "While we never have decided that the Commission may compel such reductions, we do not think it beyond the power of the state Commission to reduce the freight upon a particular article, provided the companies are able to earn a fair profit upon their entire business, and that the burden is upon them to impeach the action of the Commission in this particular."

The same line of reasoning permits a carrier to charge more on one division than upon another; but it must allege and prove facts impeaching a commission's order cutting down the higher rate.

The principle involved is, in our opinion, strongly upheld in the decision of the federal Supreme Court in *Wood* v. *Vandalia R. Co., supra,* wherein the commission's order now in question was involved. In that case the present appellant sued to restrain the Indiana Railroad Commission from enforcing the order here complained of, and upon, substantially, the same allegation as to the insufficiency of the rates that are here made. Upon an appeal by the commission from an adverse decision of the circuit court of the United States, the Supreme Court held that: "Each case, as pointed out in *Smyth* v. *Ames,* must depend upon its special facts; and the record in the present case is barren of the necessary proof." And further: "For all that appears, the Vandalia Company might enjoy, notwith-

standing the enforcement of the rates in question, ample revenue from its intrastate operations to give it a fair return both as to all its lines within the state and also as to that portion to which the order referred." In said decision the lower court was reversed because the record showed that, in testing this particular order, "there was no proof of the value of the complainant's property within the State of Indiana or of the return it received from its entire intrastate business. Nor was there proof of the value of that portion of its road which was affected by the order, or of the return from all its intrastate business upon that part of its lines."

This, to say the least, is to hold that the hearing is not properly confined to the particular rates and the "actual cost and outlay" in carrying the classes specified on a specified division in ascertaining whether a fair return is provided. The answer under consideration narrows the issue and omits other elements that should be considered.

As opposed to the above view appellant cites *Northern Pacific R. Co.* v. *North Dakota, supra,* which is the latest decision of the United States Supreme Court on this point to which we have been referred, or which we have found. This decision was, as was the decision in the Wood case, *supra,* written by Justice Hughes, and therefore announces corresponding principles, in so far as the same are involved.

Let it first be observed that the facts in the Dakota case were fully tried. It thus appeared that, all things considered, the state's legislative act fixing the rate was, as to two carriers of the three involved, arbitrary; that the state segregated a class of traffic—the hauling of lignite coal, which was the state's most extensive natural resource—and by legislative act the state required the railroads to carry such coal, within the state, at rates which were as to two of the carriers less than the actual

out-of-pocket expense involved, and that no compensating consideration or advantage operated in favor of the two carriers.

An effort and design on the part of the state was shown to develop this industry to the exclusive advantage of others than the carriers. The carriers did not obligate themselves to so operate. As shown by the case cited, three roads protested and were required by the state Supreme Court to submit to the rates. Two of them appealed, and the decision of the federal Supreme Court said that: "While the rate was found to be compensatory in the case of the Great Northern Railway Company (third road), this was distinctly shown to be due to the peculiar conditions of the traffic." *Northern Pacific R. Co.* v. *North Dakota, supra.*

As to two of the carriers, the presumption of reasonableness was by a full hearing rebutted; as to the other carrier the presumption was not rebutted. This clearly indicates that all facts and considerations having a bearing are to be heard.

The decision in the Dakota case further reads: "If in such a case there exists any practice, or what may be taken to be (broadly speaking) a standard of rates with respect to that traffic, in the light of which it is insisted that the rate should still be regarded as reasonable (or in the present case unreasonable) that should be made to appear."

Legislation fixing rates is presumed to be reasonable, and this presumption holds until all the facts showing the contrary appear, though no hearing was had 14. or permitted before the passage of the *legislative act.* A much stronger presumption obtains in favor of the order of a commission after a trial between the parties actually interested, as was had in this case. Hence a showing of nothing more than that a rate does not produce a remunerative income upon the investment

in the particular property involved in transporting the particular classes over the particular division is not sufficient. The burden is upon the carrier to exclude other facts bearing on the question. *St. Louis, etc., Railway* v. *Gill* (1894), 156 U. S. 649, 665, 15 Sup. Ct. 484, 39 L. Ed. 567, approved in *Northern Pacific R. Co.* v. *North Dakota, supra,* 600.

The state is restrained by the Constitution from arbitrary action by the legislature or by the agency of the commission in fixing such compensation. There 15. is, however, a wide field of discretion in the legislature or such commission. One attacking a rate must exclude facts which, if they exist, show the state's action to be reasonable and within this discretion. This the appellant did not do in this case.

Appellees' demurrer was sustained to appellant's third paragraph of answer. This answer alleges that appellant filed with the Railroad Commission, in accord with the requirement of the act of 1907, a schedule of rates covering the same classes of freight and the same points of destination affected by the commission's order.

Appellant asserts that, as the amendment required such schedule to be filed, and provided that the rates in such schedule named should be lawful rates, the order of the commission was superseded by the lawful rates named in the schedule.

So far as has been pointed out, there are no decisions upon this exact situation for or against appellant's proposition. Undoubtedly, had no prior action 16. been taken by the commission, said act would apply, and rates fixed in a schedule so filed would govern until changed by the commission. But where the matter of rates covered by such schedule has been fully heard and determined by the commission prior to the filing of such schedule, and especially when the party claiming the benefit of such schedule was a party

to the hearing by the commission, and is bound by the commissioner's order, such order is not affected by the *ex parte* act of filing a schedule of other rates.

The rates fixed in the schedule here filed are not lawful rates while the commission's order remains in force.

Finding no reversible error in the record, the judgment of the superior court is affirmed.

NOTE.—Reported in 122 N. E. 225. Carriers: matters to be considered on issue of reasonable rates, Ann. Cas. 1916A 8; reasonableness of rates as affected by carrier's right to receive fair return on investment, Ann. Cas. 1913B 774; rates and rate making, reasonableness, 10 C. J. 405, 413-415; what constitutes *dictum*, Ann. Cas. 1912C 1248, 11 Cyc 755.