INDIANAPOLIS WATER COMPANY *v.* MOYNAHAN PROPERTIES COMPANY ET AL.

[No. 26,204. Filed November 21, 1935. Rehearing denied February 3, 1936.]

*William L. Ranson, Baker & Daniels* and *G. R. Redding,* for appellant.

*Carl Wilde* and *A. B. Cronk,* for appellees.

FANSLER, J.—Appellees instituted this action seeking an injunction which would prevent appellant from collecting certain increases in water rates prescribed and authorized by the Public Service Commission in an order entered April 1, 1932. The Public Service Commission was not made a party, nor was it sought to enjoin the operation of the rate structure established by the order, nor was it sought to affect the rates charged by appellant, otherwise than in so far as they operated as an increase in charges for water used by appellees in certain apartment house and residence properties owned and operated by them. Upon hearing a temporary injunction issued.

The only error assigned questions the sufficiency of the facts to sustain the court's ruling in issuing the temporary injunction.

The injunction seems to have been issued upon the theory that the order of the commission is for several reasons void. Rate making is a legislative function in which the courts are not concerned so long as rights guaranteed by the Constitution are not invaded, except to see that delegated powers are lawfully exercised. The Public Service Commission is a ministerial body established by the legislature for the purpose of ascertaining facts and carrying into effect legislative rules concerning rates and charges.

It is provided by section 77 of the Public Service Commission Act (section 12748, Burns 1926, §54-428, Burns 1933) : "All rates, tolls, charges, schedules and joint rates fixed by the commission shall be in force and be prima facie lawful, and all regulations, practices and services prescribed by the commission shall be in force and shall be prima facie reasonable unless finally found otherwise in an action brought for that purpose pursuant to the provisions of sections 78 to 85." Sec-

tions 78 to 85 referred to provide for an action in the circuit or superior court against the commission. Those sections were superseded by chapter 169 of the Acts of 1929, which provide that any person adversely affected by any ruling of the commission may commence an action against the commission in the circuit or superior court of any county in which the affected utility operates, to vacate, set aside, or enjoin the enforcement of the ruling or order. It provides that the action shall be brought within sixty days after the order is made. Section 7 provides that: "No injunction shall issue in any such action suspending or staying any order of the commission except after notice to the commission and hearing." Section 125 (section 12798, Burns 1926, §54-715, Burns 1933) provides that: "A substantial compliance with the requirements of this act shall be sufficient to give effect to all the rules, orders, acts and regulations of the commission, and they shall not be declared inoperative, illegal or void for any omission of a technical nature in respect thereto." The commission is charged by statute with the enforcement of the act, and it is provided that the commission shall be the party plaintiff in actions for forfeitures provided for in the act.

One of the purposes of public rate regulation is to require and insure uniform and equal rates for service to all who are in like situation—to prevent undue discrimination. That it is competent for the public to regulate rates through governmental agencies for the purpose of accomplishing those purposes cannot be doubted. Since the government has power to fix rates and enforce their operation, both upon the utility and the rate payers, because of the public interest in rates, it surely has the right to be represented and to be heard in any action where it is sought to interfere with or enjoin the rates which have been established by

governmental authority. That it was the legislative desire and intention that the Public Service Commission should be a party, representing the public in all actions where its rate orders are questioned as unreasonable, unlawful, or void, is clearly apparent in the statutory provisions above referred to. That the legislature may decide what public agency shall represent the public in such litigation, and that the agency designated shall be a necessary party, cannot be questioned. That it was the legislative intention to make the commission a necessary party to any such action cannot be doubted in any reasonable construction of the language of the act in the light of its known purpose. Any other procedure would result in utter confusion. Rate schedules are constructed with a view to providing a reasonable return to the utility. Rates to different classes, or consumers, or for different purposes, may vary. If courts may enjoin increased rates in an action by one class of consumers against the utility without increasing, and without jurisdiction to increase, correspondingly the rates paid by other classes, the rate structure as a whole will fail to provide the reasonable return that the Constitution requires, and will become unlawful. In seeking to grant relief to a utility under such circumstances, the courts would be confronted with the problem of dealing not only with the order of the commission, reasonable in itself, but with the judgment of a court, which, by affecting the commission's order, had destroyed its usefulness. The legislative purpose that no such situation should arise is clearly apparent from the terms of the statute.

It is said in *In re Engelhard & Sons Company* (1914), 231 U. S. 646, 651, 34 S. Ct. Rep. 258: "It is the universal practice, sustained by authority, that the only mode of judicial relief against unreasonable rates is by suit against the governmental authority which established

them or is charged with the duty of enforcing them."
The court concludes that it was not competent for "each
individual having dealings with the regulated company
to raise a contest in the courts over the questions which
ought to be settled in this general and conclusive way."

Appellees cite the case of *Vandalia Railroad Co.* v.
*Schnull* (1919), 188 Ind. 87, 122 N. E. 225, as sustain-
ing their position that the rates fixed by the commission
may be attacked in an action in which the commission
is not a party, but it does not sustain that view. The case
involves an action by a ratepayer for a mandatory in-
junction against a utility to prevent it from charging
rates other than those fixed by the commission. The only
question presented was whether the commission had the
exclusive right to enforce conformance to the rates it
had established. It was held that at common law the
ratepayer was entitled to both reasonable service and
reasonable rates, and might maintain an action to en-
force them, and that the new remedy, by action by the
commission for the protection of the ratepayer, was but
cumulative. But here is presented an entirely different
question. We are concerned with the right of the Public
Service Commission to be made a party and to be heard
when the reasonableness, the lawfulness, or the validity
of rates that it has established are brought in question.
Since the Public Service Commission was not made a
party to the action, the court had no jurisdiction to re-
strain the operation of the rates in whole or in part.

In view of our conclusion, it is unnecessary to decide
whether the order of the commission is lawful.

Judgment reversed, with instructions to dissolve the
temporary injunction, and for further proceedings not
inconsistent with this opinion.