STATE EX REL. EVANSVILLE CITY COACH LINES *v.*
RAWLINGS, JUDGE, ET AL.

[Nos. 28,779 and 28,780. Filed June 25, 1951. Rehearing denied
July 18, 1951.]

554

*Howell Ellis,* of Indianapolis; and *Ortmeyer, Bamberger, Ortmeyer & Foreman,* of Evansville, for relator.

*Wilbur F. Dassel,* of Evansville, for respondents.

BOBBITT, J.—The cases out of which these actions grow involved identical questions and were consolidated for hearing on restraining order by the trial court. These actions were consolidated for briefing

before this court, and they are so treated in this opinion.

Charles Tinsley, as President and Representative of the Evansville Industrial Union Council, Congress of Industrial Organizations, and Walter Hayden, Secretary of said organization, filed their complaint in two paragraphs in the Superior Court of Vanderburgh County on April 17, 1951, against Evansville City Coach Lines, Inc. and the Public Service Commission of Indiana and the members thereof. Among other things said complaint alleged that said Evansville City Coach Lines, Inc. filed a schedule of a proposed new tariff and bus fares applicable to its lines and routes in the city of Evansville, Indiana, to become effective January 15, 1951; that the said C. I. O. Union filed objections and a protest to the granting of the rate proposed by said tariff, which was designated No. B-4; that a hearing was held by the Public Service Commission of Indiana upon said protest and subsequently an order was issued by the commission suspending the operation of said new Tariff No. B-4 for a period of ninety days; that thereafter, on April 3, 1951, and while Tariff No. B-4 was still under suspension, said company filed with the Public Service Commission of Indiana its proposed tariff schedule No. B-5; that neither, the commission nor the company, notified the union or its attorney of the filing of said schedule No. B-5; and that because of said failure to notify said union or its attorney they were denied the right to file objections and protest to the commission against the rates proposed in said schedule B-5, and that because of such failure of notice the members of said union were deprived of their property without due process of law and were discriminated against by such action of the commission. It is further alleged in paragraph two of said complaint that the putting into

effect the scheduled rates provided by said Tariff No. B-5 caused the membership of the union to suffer irreparable injury and loss, and that they are, by such action, deprived of their property without due process of law.

By paragraph one of their complaint said plaintiffs seek to have the action of the Public Service Commission of Indiana, in permitting the rates as set out in schedule B-5 to become effective, set aside, or, in the alternative, to compel the commission to rule upon schedule B-4 which was under suspension at the time of the filing of schedule B-5. By paragraph two of said complaint said plaintiffs seek to enjoin the Evansville City Coach Lines, Inc. from collecting fares at the rates provided in said Tariff No. B-5, and further, that said company be mandated to charge the schedule of fares as provided in Tariff No. B-3, and that the Public Service Commission of Indiana be restrained and enjoined "from taking any steps whatsoever to interfere with the Company's Tariff No. B-3 so filed with the Public Service Commission of Indiana," and that upon a final hearing said temporary injunction be made permanent.

Also, on April 17, 1951, James Payne, as President and Representative of Local 813, United Electrical, Radio & Machine Workers of America, filed his complaint against the Evansville City Coach Lines, Inc. and the Public Service Commission of Indiana and the members thereof, making similar allegations and asking similar relief as were made and asked in the complaint filed by the C. I. O. union.

On the day of the filing of the above complaints, the Judge of the Superior Court of Vanderburgh County, after consolidating the two causes, issued a restraining order, without notice, restraining and enjoining the Evansville City Coach Lines, Inc. from en-

forcing the provisions of Tariff No. B-5 and from collecting from the revenue passengers any fares in excess of those provided for in Tariff No. B-3, and restraining and enjoining the Public Service Commission of Indiana and the members thereof, and their employees, from permitting the said Evansville City Coach Lines, Inc. to enforce the provisions of Tariff No. B-5, and from enforcing or collecting any fares other than those provided in its Tariff No. B-3 and supplements thereto, until further order of the court.

On April 23, 1951 relator herein filed these actions praying that a writ of mandate and prohibition issue to restrain further action by the Judge of the Vanderburgh Superior Court and the Vanderburgh Superior Court in the two proceedings there pending.

Respondent contends that he has jurisdiction in said causes number B-9429 and number B-9430 now pending in said Superior Court of Vanderburgh County (1) because plaintiffs in those actions have no adequate remedy at law whereby their rights may be determined in a court of competent jurisdiction; (2) that relator, by filing with the Commission its Tariff No. B-5 at a time when a suspended Tariff No. B-4 was pending before the commission, violated an order of the commission suspending said Tariff No. B-4; and (3) that the action of the Public Service Commission of Indiana in permitting said Tariff No. B-5 to become operative without notice to the plaintiffs in said causes number B-9429 and number B-9430 denied them and the persons whom they represented due process of law.

Relator contends that the exclusive right, jurisdiction and powers to fix fares and charges applicable to common carriers by motor vehicles is vested in the Public Service Commission, and that the Superior Court of Vanderburgh County is without jurisdiction to set aside and enjoin the enforcement of a tariff filed

with the Public Service Commission in the manner provided by law, and thereby determine the question of what rates shall be charged by the Evansville City Coach Lines, Inc.

*First:* We shall consider respondent's contentions that plaintiffs had no adequate remedy at law and that relator, by its action in filing Tariff No. B-5, violated an order of the commission. Section 47-1215, Burns' 1940 Replacement provides:

> "Upon complaint in writing filed with the commission or upon the commission's own initiative without complaint, the commission may investigate whether or not any person subject to the provisions of this act has failed to comply with any provisions of this act or with any requirement established pursuant thereto.
>
> "If the commission, after notice and hearing, finds, upon any such investigation, that such person has failed to comply with any such provision or requirement, the commission shall issue an appropriate order to compel such person to comply therewith."

It is clear, by the terms of the statute above quoted, that if relator, as alleged in respondent's return, is violating an order of the Public Service Commission, the remedy lies in petition to the commission by those who claim that such a regulation or order is being violated. This court said in *Chicago, etc., R. Co.* v. *Railroad Com., etc.* (1911), 175 Ind. 630, at page 637, 95 N. E. 364, "Injunctions will not be granted where there is an adequate legal remedy. *Where the commission has power to grant relief, application therefor must be made to it. Southern Ind. R. Co.* v. *Railroad Com., etc.* (1909), 172 Ind. 113 [87 N. E. 966]; *Prentis* v. *Atlantic Coast Line Co.* (1908), 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150; *Texas*

*etc., R. Co.* v. *Abilene, etc., Oil Co.* (1907), 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553; *Interstate Commerce Com.* v. *Illinois Cent. R. Co.* (1909), 215 U. S. 452, 30 Sup. Ct. 155, 54 L. Ed. 280." (Our italics).

The United States Supreme Court, in an action brought by the Illinois Central Railroad Company against the Interstate Commerce Commission to set aside, annul and enjoin the enforcement of an amended order of the commission, speaking through Justice Sutherland, in *United States* v. *Illinois Central R. Co.* (1934), 291 U. S. 457, 54 S. Ct. 471, 78 L. Ed. 909, at page 917 said:

"If the preliminary order be erroneous in any particular, it is susceptible of correction by the commission upon the hearing thus provided for. It will be time enough for appellees to seek the aid of a court of equity when they shall have fully availed themselves of this administrative remedy, and the commission shall have taken adverse action. Until then they are in no situation to invoke judicial action."

If, as is contended by respondent, relator is charging illegal rates in the city of Evansville and thus violating an order or regulation of the Public Service Commission plaintiffs, in the actions pending in said Superior Court, must first exhaust their remedy of petition to the commission by pointing out that said company is not complying with the provisions of an approved tariff schedule and is thereby violating an order of the commission. *Indianapolis Water Co.* v. *Moynahan Prop. Co.* (1936), 209 Ind. 453, 456, 198 N. E. 312; *Southern Ind. R. Co.* v. *Railroad Com., etc.* (1909), 172 Ind. 113, 117, 119, 87 N. E. 966, *supra; In Re Engelhard & Sons Co.* (1914), 231 U. S. 646, 651, 34 S. Ct. 258, 58 L. Ed. 416, 418.

It then becomes the duty of the Public Service Commission to make an investigation of the matters alleged in said petition and if, after notice and hearing, it should find that illegal rates are being charged by relator then the commission, under the authority vested in it by the legislature, will order the offender to desist from charging such illegal rates and if, after such order by the commission, such offender refuses to comply therewith, then the commission is the proper party to institute court proceedings to compel compliance with its order. *Wabash R. Co.* v. *Railroad Com., etc.* (1911), 176 Ind. 428, 439, 95 N. E. 673. On the other hand, if after such investigation the commission finds that the alleged violation does not exist and no order is being violated, then the petitioners may have their day in court by an appeal to any court of competent jurisdiction upon the ground that the order or decision of the commission is "insufficient, unreasonable or unlawful" as provided in § 47-1249, Burns' 1940 Replacement. Cf. *State ex rel. McCormick* v. *Superior Court of Knox County* (1951), 229 Ind. 118, 95 N. E. 2d 829, 832; *In re Northwestern Indiana Tel. Co.* (1930), 201 Ind. 667, 171 N. E. 65.

*Second:* In considering respondent's contention that due process of law was denied plaintiffs in said actions, it is necessary for us to determine, only, whether or not notice to the plaintiffs in the actions below, and to the users of the service rendered by relator in the city of Evansville was required under the circumstances in this case. Section 47-1227, Burns' 1940 Replacement provides:

"47-1227. Tariffs on common carriers by motor vehicle.—(a) Every common carrier by motor vehicle shall file with the commission and *print and keep open to public inspection,* tariffs showing

all rates, fares, charges for transportation, and all service in connection therewith, of passengers or property in intrastate commerce between points on its own route and between points on the route of any other such carrier or on the route of any common carrier by railroad, both steam and electric, when and as through routes and joint rates are established. Such rates, fares and charges shall be stated in money of the United States. The public service commission may prescribe the form and manner in which such tariffs shall be published and may reject any tariff filed with it which is not in compliance with this section and when so rejected, such tariff shall be void and its use shall be unlawful.

"(b) No common carrier by motor vehicle shall charge or demand or collect or receive a greater or less or different compensation for transportation or for any service in connection therewith between points enumerated in such tariff than the rates, fares and charges specified in *the tariffs in effect at the time,* and no such carrier shall refund or remit in any manner or by any device, directly or indirectly, personally or by agent, any portion of rates, fares or charges so specified nor extend to any person any facilities for transportation except such as are specified in its tariffs.

"(c) No change shall be made in any rate, fare, charge or classification or any rule, regulation or practice except after ten (10) days' notice of the proposed change. Such notice shall plainly state the change proposed to be made and the effective date thereof. The commission may, in its discretion and for good cause shown, allow changes upon notice in less time than herein specified and permit tariffs to be filed and become effective in particular instances on shorter notice than stated herein.

"(d) No common carrier by motor vehicle shall engage in the transportation of passengers or property unless such tariffs have been filed and published in accordance with the provisions of this act. (Acts 1935, Ch. 287, § 17, p. 1412.)" (Our italics.)

The notice provided in paragraph (c) of said section does not require the Public Service Commission or the carrier to give notice to the public generally or to those who use the service of the carrier. *Raymond Lumber Co.* v. *Raymond Light & W. Co.* (1916), 92 Wash. 330, 159 Pac. 133, L. R. A. 1917C 574. The purpose of the ten days' notice therein provided is to inform and apprise the Public Service Commission of an intention on the part of a common carrier by motor vehicle to make a change in its present rate, fare, charge, classification, rule, regulation or practice. After ten days from the date of filing of notice with the commission of such change in rates, fares, or other changes, as provided in said paragraph (c), and if no objections have been filed to such proposed change, and the commission takes no action thereon, the new rates and charges become effective as a matter of law and they have the same force and effect as if specifically fixed by the legislature. *Midland Realty Co.* v. *Kansas City P. & L. Co.* (1937), 300 U. S. 109, 57 S. Ct. 345, 81 L. Ed. 540, 544; *Public Service Commission* v. *Pavilion Natural Gas Co.* (1921), 232 N. Y. 146, 133 N. E. 427; 43 Am. Jur., Public Utilities and Services, § 206, p. 710.

The Public Service Commission, in the fixing of rates and charges, is exercising a power delegated to it by the legislature. *State, ex rel.* v. *Lewis* (1918), 187 Ind. 564, 569, 120 N. E. 129; *Southern Ind. R. Co.* v. *Railroad Com., etc.* (1909), 172 Ind. 113, 87 N. E. 966, *supra; Midland Realty Co.* v. *Kansas City P. & L. Co.* (1937), 300 U. S. 109, 57 S. Ct. 345, 81 L. Ed. 540, *supra.*

As is the case here, where there is no specific constitutional or statutory requirement therefor, notice

of proceedings before a public utility commission is not essential to the validity of the commission's acts. 51 C. J., Public Utilities, § 105, p. 56.

Due process of law does not require a hearing prior to the taking effect of rates filed under the provisions of said § 47-1227, Burns' 1940 Replacement where no objection has been filed and no action has been taken thereon by the Public Service Commission, within the ten day period as prescribed in paragraph (c) of said section. *Campbell* v. *Heiss* (1944), 222 Ind. 297, 301, 53 N. E. 2d 634; *Clift* v. *Southern R. Co.* (1919), 188 Ind. 472, 124 N. E. 457; *Crane* v. *Hahlo* (1922), 258 U. S. 142, 147, 42 S. Ct. 214, 66 L. Ed. 514, 517; *Home Teleph. & Teleg. Co.* v. *Los Angeles* (1908), 211 U. S. 265, 29 S. Ct. 50, 53 L. Ed. 176; *Phillips* v. *Commissioner of Internal Revenue* (1931), 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289; *American Surety Co.* v. *Baldwin* (1932), 287 U. S. 156, 53 S. Ct. 98, 77 L. Ed. 231.

It is apparent from the foregoing that none of the constitutional rights of the plaintiffs in the actions number B-9429 and number B-9430 in the Superior Court of Vanderburgh County have been violated either by the relator herein or by the Public Service Commission of Indiana, and this being true the court cannot assume jurisdiction therein and thereby interfere with the legislature's power over the fixing of rates for common carriers by motor vehicles. *Southern Ind. R. Co.* v. *Railroad Com., etc.* (1909), 172 Ind. 113, 130, 87 N. E. 966, *supra.*

*Third:* Section 47-1215, Burns' 1940 Replacement provides:

"The commission is hereby vested with power and authority to supervise and regulate every motor carrier subject to the provisions of this act, to fix just and reasonable rates, fares and charges, and to prescribe classifications, rules and regulations pertaining thereto, all of which shall be just and reasonable; to regulate and supervise the schedules, service, safety, methods and hours of operating the same."

By the above provision the legislature has delegated to the Public Service Commission of Indiana the exclusive power of regulating and fixing fares to be charged by the relator. *Stuck* v. *Town of Beech Grove* (1929), 201 Ind. 66, 76, 163 N. E. 483; *City of Logansport* v. *Public Service Comm.* (1931), 202 Ind. 523, 534, 177 N. E. 249, 76 A. L. R. 838; *City of Huntington* v. *Northern Ind. Power Co.* (1937), 211 Ind. 502, 511, 5 N. E. 2d 889, 6 N. E. 2d 335; *N. Y. Central Railroad Co.* v. *Pub. Service Com.* (1937), 212 Ind. 329, 336, 7 N. E. 2d 957; *Pub. Ser. Com.* v. *Indianapolis Railways* (1947), 225 Ind. 30, 39, 72 N. E. 2d 434; *Schisler* v. *Merchants Trust Co.* (1950), 228 Ind. 594, 600, 601, 94 N. E. 2d 665; *McCardle* v. *Akron Tel. Co.* (1928), 87 Ind. App. 59, 64, 156 N. E. 469, 160 N. E. 48; 3 Pond, *Public Utilities*, § 946, p. 1951.

The effect of the restraining order issued by the Superior Court of Vanderburgh County is to fix the rates which the Evansville City Coach Lines, ■ Inc. can charge for transporting passengers within the limits of the city of Evansville, in the amounts as set out in their tariff schedule Number B-3. If it should be made permanent the effect would be to fix the rates which this carrier could charge in the amounts as set up in said schedule Number B-3 permanently, or until such injunction might be dissolved by the court; and the Public Service Commission would be enjoined from changing or altering said

rates or fixing a new schedule of rates and thus permanently enjoined from the performance of a duty which is specifically imposed upon it by the legislature. *Indianapolis Water Co.* v. *Moynahan Prop. Co.* (1936), 209 Ind. 453, 456, 198 N. E. 312, *supra.*

The power to fix rates for public utilities is a legislative function and this court has consistently held that courts cannot invade the province of the legislature. *Langenberg* v. *Decker* (1892), 131 Ind. 471, 31 N. E. 190, 16 L. R. A. 108; *Hanly* v. *Sims* (1911), 175 Ind. 345, 93 N. E. 228, 94 N. E. 401; *State ex rel. Black* v. *Burch* (1948), 226 Ind. 445, 80 N. E. 2d 294, 81 N. E. 2d 850; *Schisler* v. *Merchants Trust Co.* (1950), 228 Ind. 594, 599, 94 N. E. 2d 665, *supra.*

It then follows that the Superior Court of Vanderburgh County is without jurisdiction to determine the questions presented by causes number B-9429 and number B-9430 filed therein.

This court has power, by writ of mandate and prohibition, to confine an inferior court within its lawful jurisdiction. Section 3-2201, Burns' 1946 Replacement; *State ex rel. Acker* v. *Reeves* (1951), 229 Ind. 126, 95 N. E. 2d 838, 839; *State ex rel. Beaman* v. *Circuit Court of Pike County* (1951), 229 Ind. 190, 96 N. E. 2d 671.

The temporary writs of prohibition heretofore issued herein are hereby made permanent, and the alternative writs of mandate heretofore issued herein are made absolute, and respondent John D. Rawlings as Judge of the Superior Court of Vanderburgh County, Indiana, is ordered to vacate and set aside all orders made in cause number B-9429 thereof entitled: JAMES PAYNE, as President and Representative of Local 813, United Electrical, Radio & Machine Workers of

America vs. Evansville City Coach Lines, Inc., a corporation, Hugh W. Abbett, Lawrence W. Cannon and Crawford Parker, as members of and constituting the Public Service Commission of Indiana, and the PUBLIC SERVICE COMMISSION OF INDIANA; and cause number B-9430 thereof entitled: CHARLES TINSLEY, as President and Representative of the Evansville Industrial Union Council, Congress of Industrial Organizations, WALTER HAYDEN, as Secretary and Representative of the Evansville Industrial Union Council, Congress of Industrial Organizations vs. EVANSVILLE CITY COACH LINES, INC., a corporation, PUBLIC SERVICE COMMISSION OF INDIANA, HUGH W. ABBETT, LAWRENCE. W. CANNON AND CRAWFORD PARKER, as members of and constituting the Public Service Commission of Indiana.

Emmert, J., dissenting.

## DISSENTING OPINION

EMMERT, J.—We issued a temporary writ of prohibition prohibiting the trial court from making any further orders or exercising any further jurisdiction in cause number B-9429 pending in said court entitled James Payne, as President and Representative of Local 813, United Electrical, Radio & Machine Workers of America v. Evansville City Coach Lines, Inc., a corporation, Hugh W. Abbett, Lawrence W. Cannon and Crawford Parker, as members of and constituting the Public Service Commission of Indiana, and the Public Service Commission of Indiana, and an alternative writ of mandamus requiring the expunging from the record of all orders made in said cause. From

the certified copy of the complaint in cause number B-9429, it appears that the action was prosecuted by James Payne as a class action in behalf of all the members of Local 813, United Electrical, Radio & Machine Workers of America, said members being bus riders and customers of the Evansville City Coach Lines, Inc.

The controversy arises out of a proposed new tariff for bus fares, which was filed with the Public Service Commission of Indiana, hereafter referred to as the commission, to become effective January 15, 1951. This was numbered P. S. C. I. B-4. The commission held a hearing after notice on this proposed increase in rates, and the increase was resisted by the plaintiffs. The commission, upon motion of the plaintiffs, suspended the increased fares for a period of sixty days from and after March 8, 1951. On April 3, 1951, the coach lines filed another tariff increasing the bus fares to be charged by the company, on which no notice was given by either the commission or the coach lines, and the complaint charges that the commission permitted said tariff to go into effect on April 13, 1951. The complaint charged that the plaintiffs were denied procedural due process of law in that no notice or hearing was had in violation of the Fourteenth Amendment of the United States Constitution and § 12 of Article 1 of the Constitution of Indiana,[1] and that said tariff is void. A restraining order without notice was issued by the trial court.

The tariff entitled P. S. C. I. B-5 is void for lack of notice and hearing thereon in violation of the due

---

[1] "All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. . . ." Section 12, Article 1, Constitution of Indiana.

process clause of the Fourteenth Amendment of the United States Constitution, and § 12 of Article 1 of the Constitution of Indiana, as well as being in violation of the statutory provisions controlling the Public Service Commission of Indiana.

A public utility may not have its rates reduced by the action of an administrative board in violation of the requirements of procedural due process of law under the Fourteenth Amendment. In *Railroad Com. of Cal.* v. *Pacific Gas & Electric Co.* (1938), 302 U. S. 388, 393, 58 S. Ct. 334, 338, 82 L. Ed. 319, 322, Chief Justice Hughes stated the requirements of procedural due process as follows: "There must be due notice and an opportunity to be heard, the procedure must be consistent with the essentials of a fair trial, and the Commission must act upon evidence and not arbitrarily." Later in the same year the same Chief Justice, in deciding the question of notice and hearing to be afforded by an administrative board stated: "The vast expansion of this field of administrative regulation in response to the pressure of social needs is made possible under our system by adherence to the basic principles that the legislature shall appropriately determine the standards of administrative action and that in administrative proceedings of a quasi-judicial character the liberty and property of the citizen shall be protected by the rudimentary requirements of fair play. These demand a 'fair and open hearing,'— essential alike to the legal validity of the administrative regulation and to the maintenance of public confidence in the value and soundness of this important governmental process. Such a hearing has been described as an 'inexorable safeguard.'" *Morgan* v. *United States* (1938), 304 U. S. 1, 14, 15, 58 S. Ct. 773, 775, 82 L. Ed. 1129, 1130, 1131.

The commission must afford due process of law to the utility when it makes an emergency order affecting rates under § 54-712, Burns' 1951 Replacement. "It is our opinion that orders affecting rates made by the commission in a proceedings under said § 54-712, Burns' 1933, are not immune from the constitutional requirement of due process of law including the requirement of an adequate hearing to determine whether or not the utility is being compelled to operate under an unreasonable and confiscatory rate due to some emergency." *Pub. Ser. Com.* v. *Indianapolis Railways* (1947), 225 Ind. 30, 40, 72 N. E. 2d 434, 439. A requirement of a hearing includes a requirement of notice, for "the essential element of due process of law is an opportunity to be heard, and a necessary condition of such opportunity is notice." *Jacob* v. *Roberts* (1912), 223 U. S. 261, 265, 32 S. Ct. 303, 305, 56 L. Ed. 429, 431.

Since the utility is entitled to procedural due process of law, which includes a hearing and due notice thereof, it logically follows as a necessary corollary of such rule that the users of such utility service, whose contract rights, which are property rights, are adversely affected by an increase of rates, are likewise entitled to procedural due process of law, which guarantees a hearing and notice thereof. If the utility is entitled to its day in a hearing before the commission, so are the users of its service.

An individual user of the service has the right to object to an order of the commission fixing rates, even if the rate fixed is a reduction. "Public utilities enjoy monopolies and they are privileged to exact rates established by agencies set up by law. Consumers of the products of such utilities have the undoubted right to assert that they are adversely affected by rates so promulgated. The fact that the orders of the Public

Service Commission embraced service rates was a sufficient basis for the appellees' right to a judicial review. It is no answer to say that the order relating to rates may not be reviewed because it required a reduction. The appellees may have believed that the reduced rates were exhorbitant." *Terre Haute Gas Corporation* v. *Johnson* (1942), 221 Ind. 499, 506, 45 N. E. 2d 484, 487. It does violence to our concept of "equal justice under law" to hold that the utility was entitled to due process of law, but that the user of its service was not entitled to due process of law. The commission does not represent the users of the service in Indiana any more than it represents the utilities. *In re Northwestern Indiana Tel. Co.* (1930), 201 Ind. 667, 171 N. E. 65. Section 54-112, Burns' 1951 Replacement. The trier of the facts cannot be impartial and an opponent at the same time. *Powell* v. *Alabama* (1932), 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158.

The Public Service Commission of Indiana is a special statutory board and its authorities and duties are prescribed by the various statutes. Chapter 101 of the 1941 Acts as amended, which created the Public Service Commission of Indiana, Ch. 169 of the 1929 Acts, § 54-429 *et seq.*, Burns' 1951 Replacement, which is a general act on review of decisions, orders and determinations of the commission, and Ch. 287 of the 1935 Acts as amended, § 47-1121 *et seq.*, Burns' 1940 Replacement, known as the Motor Vehicle Act, should be construed in pari materia, since they all deal with rights, powers and duties of the commission and parties who are affected by the action of the commission.

Chapter 101 of the 1941 Acts, which established the Public Service Commission of Indiana clearly provides that the commission is a quasi-judicial body. Section

54-112, Burns' 1951 Replacement, provides that "The commission created by this act shall in all controversial proceedings heard by it be an impartial fact-finding body and shall make its orders in such cases upon the facts impartially found by it. The commission shall in no such proceedings, during the hearing, act in the role either of a proponent or opponent on any issue to be decided by it. All evidence given in any such proceeding shall be offered on behalf of the respective parties to, or appearing in, the proceeding and not in the name or behalf of the commission itself." We have held that this section requires the "facts should be found specially and not generally." *Kosciusko County, etc.* v. *Public Service Comm.* (1948), 225 Ind. 666, 674, 77 N. E. 2d 572, 575. See also *Wabash Valley Coach Co.* v. *Arrow Coach Lines* (1950), 228 Ind. 609, 94 N. E. 2d 753.

Section 47-1215, Burns' 1940 Replacement, provides that, "The commission is hereby vested with power and authority to supervise and regulate every motor carrier subject to the provisions of this act, to fix just and reasonable rates, fares and charges. . . ." "When it [the commission] is given authority to do a certain thing, the duty is imposed on it by statute to do such thing, and it has no authority to delegate its power to any one else." *New York Central R. Co.* v. *Public Service Com.* (1922), 191 Ind. 627, 635, 134 N. E. 282, 285. "That the grant of power to a public officer carries with it a mandate that such power shall be exercised for the public good and in the manner prescribed by law is too well settled to admit of argument as is also the principle that in such instances the words 'power' and 'authority' may be construed as 'duty' and 'obligation.' " *Hall* v. *State ex rel. Freeman* (1944), 114 Ind. App. 328, 332, 333, 52 N. E. 2d 370, 371, 372.

See also *Bowles* v. *Indianapolis Railways* (1946), 64 Fed. Supp. 865; *Bowles* v. *Indianapolis Railways* (1946), 154 F. 2d 218.

It is conceded that the fixing of rates is a legislative matter. The legislature has said that the rates must be reasonable, and has delegated to a quasi-judicial commission the duty of making findings of facts as to what is reasonable at the time the rate is fixed. The legislature may delegate such powers and duties to a proper agency of government, but it may not abdicate a legislative function, nor does the commission have either the power or right to delegate its duty to determine whether a rate is reasonable. *New York Central R. Co.* v. *Public Service Com.* (1922), 191 Ind. 627, 134 N. E. 282, *supra*. To construe the act to permit a delegation by the commission to a motor vehicle common carrier of the legislative right to fix a reasonable rate would make the act unconstitutional. Such construction will not be given if the act can be construed as constitutional. Therefore, whenever a new rate is filed with the commission, the commission must determine whether or not it is reasonable, and it cannot delegate this duty to the carrier. Therefore, when a new rate is filed it does not become operative as a matter of law by lapse of time. The change of a rate is a controversial matter in which the rate payers are interested. *In re Northwestern Indiana Tel. Co.* (1930), 201 Ind. 667, 171 N. E. 65, *supra;* *Terre Haute Gas Company* v. *Johnson* (1942), 221 Ind. 499, 45 N. E. 2d 484, 48 N. E. 2d 455, *supra*. The action of the commission in the form of a finding that the rate is reasonable is required in order to conform to constitutional requirements.

Section 47-1215, Burns' 1940 Replacement, further provides that "The commission shall have the power to hear all petitions, applications or motions filed with

the commission. Such hearings may be conducted by the commission, by any member of the commission or by any examiner authorized by the commission." Section 47-1225 (g), Burns' 1940 Replacement (1949 Supp.), provides that "Whenever there shall be filed with the commission any schedule stating a new individual or joint rate, fare, charge, or classification for the transportation of passengers or property by a common carrier or carriers by motor vehicle . . . the commissioner is hereby authorized and empowered upon complaint of any interested party or upon its own initiative at once and if it so orders, without answer or other formal pleading by the interested carrier or carriers, *but upon reasonable notice,* to enter upon a hearing concerning the lawfulness of such rate, fare, or charge, . . . At any hearing involving a change in a rate, fare, charge, or classification or in a rule, regulation, or practice, the burden of proof shall be upon the carrier to show that the proposed changed rate, fare, charge, classification, rule, regulation, or practice is just and reasonable." (Italics supplied.) Subsection (c) of § 47-1227, Burns' 1940 Replacement (1949 Supp.), provides that "No change shall be made in any fare, charge or rule, regulation or practice for or in connection with the transportation of passengers except after 10 days' notice of the proposed change. Such notice shall plainly state the change proposed to be made and the effective date thereof. The commission may, in its discretion and for good cause shown, allow changes upon notice in less time than herein specified and permit tariffs to be filed and become effective in particular instances on shorter notice than stated herein." Admittedly the legislative intent is obscure in this subsection. If it should be construed that the notice requirement runs to the commission, it is superfluous and results in absurdity, since the pro-

posed change itself is notice to the commission that it has been filed the same as a court takes notice of pleadings filed with it. If the common carrier is filing the proposed change, it needs no notice. If the commission on its own motion has instituted an investigation and hearing pursuant to which it orders changes, the common carrier would be entitled to notice. The only reasonable construction placed on the notice requirement is that the notice should be directed to parties adversely affected by an order of the commission, whether it be the utility or the users of the service, duly made after a hearing.

Section 47-1240, Burns' 1940 Replacement, of the Motor Vehicle Act, requires the commission to publish notice whenever it orders a hearing. Section 8 of Ch. 101 of the 1941 Acts, which created the commission, as amended by Ch. 244 of the 1943 Acts, § 54-115 Burns' 1951 Replacement, makes specific provision for notice of hearing on motor vehicle carrier matters. It states: "Whenever the public service commission of Indiana shall order a hearing in any proceeding instituted by or against the motor vehicle carrier, notice of such hearing shall be given by one [1] publication appearing not less than ten [10] days prior to the date fixed for such hearing in two [2] newspapers of general circulation published in the county where such motor vehicle carrier has its principal office or place of business. . . ."[2] The legislature indicated this published notice was jurisdictional, for the concluding part of such section provided for additional notice by mail, but provided, "That *failure to mail* such notices shall not be deemed to be jurisdictional, but may be ground for rehearing." (Italics supplied.)

---

[2] The further provisions on notice are not material to this decision.

The provisions of Ch. 101 of the 1941 Acts as amended by Ch. 46 of the 1945 Acts, § 54-111, Burns' 1951 Replacement, concerning the Public Counselor, also provide for notice. "He [the public counselor] shall be entitled to, and when requested by the commission he shall appear on behalf of ratepayers, patrons and the public in all hearings before the commission. . . . Upon the institution of any proceeding before the commission in which the public counselor is authorized to appear, the commission shall immediately notify such public counselor thereof and transmit to him a copy of the petition or complaint filed therein. . . . The commission shall not proceed to hear any such petition, complaint or proceeding in which said public counselor is entitled to appear until he shall have had at least ten [10] days' notice thereof, unless he shall have waived the same. In all proceedings before the commission and in any court in which he shall appear, the counselor shall have charge of the interests of the ratepayers and patrons of the utility and utilities involved and he shall give notice of such hearing to all municipalities, corporations, or organizations and persons parties to such proceedings, suit or action, other than such utility or utilities. In addition to such notice given by such public counselor, *the commission shall give the notices otherwise required by law.* . . ."[3] (Italics supplied.)

There is no indication in any of the statutes involved in this controversy that the commission is authorized to fix or change a rate, fare, charge or classification *ex parte.* When the statute authorized and empowered

---

[3] The concluding proviso provides that "nothing in this section contained shall be construed to prevent any party interested in such proceeding, suit or action from appearing in person or from being represented by counsel therein."

the commission "to enter on a hearing concerning the lawfulness of such rate, fare, or charge," the legislature made it the duty to do so, and § 47-1225 (g), Burns' 1940 Replacement (1949 Supp.), required that it be "upon reasonable notice." Section 54-115, Burns' 1951 Replacement, provides the requirements of reasonable notice.

Section 47-1249, Burns' 1940 Replacement, should be construed in pari materia with the provisions of Ch. 169 of the 1929 Acts, which is the general act "concerning review of decisions, orders, determinations, requirements or directions" of the commission. Section 54-431, Burns' 1951 Replacement, provides that the commission, after service of summons upon it, shall cause written notice to be mailed all parties who appeared before the commission during any part of the hearing or consideration of the matter complained of. The general rule is that when a statutory administrative board acts outside its authority granted by the statutes, such acts are absolutely void. *New York Central R. Co.* v. *Public Service Com.* (1922), 191 Ind. 627, 134 N. E. 282, *supra.* There is no statutory requirement that any of the users of the bus service should petition the commission for a rehearing before resorting to equity for relief. Here Tariff P. S. C. I. B-5 is void for want of jurisdiction by reason of lack of notice. "A party is not required to follow a legal route prescribed to overcome an order if void. When he desires to free himself of a void administrative order, which if executed, would deprive him of his property, he may resort to equity for instant relief." *State Bd. of Tax Comm.* v. *McDaniel* (1928), 199 Ind. 708, 717, 718, 160 N. E. 347, 350. Section 54-429, Burns' 1951 Replacement, makes no requirement for a rehearing, and § 54-430, Burns' 1951 Replacement, clearly indicates that the action may be commenced

clearly indicates that the action may be commenced without a petition for a rehearing.

However, in this case the trial court issued a restraining order without notice. Section 54-435, Burns' 1951 Replacement, provides that "No injunction shall issue in any such action suspending or staying any order of the commission except after notice to the commission and hearing." Acts 1929, ch. 169, § 7, p. 530. This prohibits the issuance of restraining orders without notice. The temporary writ of prohibition should be amended to prohibit the judge from enforcing the restraining order without notice, since that was issued without jurisdiction because it was prohibited by statute, but the trial court does have jurisdiction to proceed to review the action of the commission and to issue both a temporary injunction and a permanent injunction. I would amend the temporary writ of prohibition, and as amended, make it permanent.

NOTE.—Reported in 99 N. E. 2d 597.